JAMES H. VIVIAN ET AL. APPEAL FROM PROBATE.

Second Judicial District, Norwich, October Term, 1901.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

> 74 257,
> 77 642
> 77 643

The Superior Court, on an appeal from the probate of a will, sits in the place of the Court of Probate, and may receive any evidence on matters covered by the reasons of appeal which would have been competent on the original hearing.

The right of trial by jury is not violated by reasonable modifications of common law procedure for the better promotion of justice and public convenience.

General Statutes, § 545, which provides that any or all the attesting witnesses to a will may sign an affidavit " stating such facts as they would be required to testify to prove such will in court," and that "the oath of any such witness so taken shall be accepted by the Court of Probate as if it had been taken before said court," is such a modification of the common law procedure, and is constitutional and valid.

A subscribing witness testified that the testator executed the will in presence of three witnesses, one of whom subscribed the name D; that he had no knowledge who D was, whence he came, nor where he then was, and that he testified as to D's presence and signature, not from memory, but from what appeared on the document.

Another witness testified that he had made diligent search for such a person as *D*, and could find no trace of him, and that no such name appeared for twenty years in the city directory. The date of the will was fourteen years prior to the date of the hearing. *Held* that the evidence justified a finding that due search had been made for *D*, and the probating of the will without the production of *D*, or further proof of his existence.

A feeling is a fact.

On an issue as to testamentary capacity or undue influence, declarations by the testator of kind or hostile feelings toward legatees are admissible as tending to show the probability or improbability that the will expressed his real wishes, and was his real act. But declarations that he made the will under constraint of a legatee, and in other matters had acted under his domination, are not expressions of feeling, but of mental conclusions and so mere hearsay.

When the reasons of appeal do not raise the question of general testamentary capacity, evidence from the appellants to show such incapacity is inadmissible.

Evidence of what medicines the testator was accustomed to use is immaterial, in the absence of any claim that they were such as to affect his free will or testamentary capacity.

A question as to what attitude the testator's mind took as regards his wife, "when she had a mind on any subject," calls for an opinion which is too remote and conjectural to be entitled to consideration.

A ruling striking out an answer as irresponsive, if erroneous, is cured by an answer by the same witness to the same effect to a question subsequently put.

Evidence of the insanity of the legatee by whom undue influence is claimed to have been exerted, is inadmissible, unless there is an offer to show that the insanity contributed to produce undue influence or constraint.

Evidence that the testator's wife, a few days before the making of his will, had, to his knowledge, made a will in which she gave all her property to him, is admissible in support of the will, as tending to show a motive for his leaving his property to her.

A testator's susceptibility to influence is properly the subject of opinion evidence from those who knew him well.

Argued October 15th—decided December 20th, 1901.

APPEAL from an order and decree of the Court of Probate for the district of Norwich approving a certain written instrument as the last will and testament of John L. Vivian of Norwich, deceased, taken to the Superior Court in New London County and tried to the jury before *Thayer, J.;* verdict and judgment sustaining the will, and appeal by the

contestants for alleged errors in the rulings of the court upon questions of evidence. *No error.*

The reasons of appeal were that the paper was not duly executed as a will, and also the use of undue influence by the wife of the alleged testator, who was the sole legatee.

*William H. Shields* and *Charles F. Thayer*, for the appellants (contestants).

*Frank T. Brown* and *Donald G. Perkins*, for the appellee (the executors).

BALDWIN, J. There was written on the paper propounded as the will of John L. Vivian the following affidavit: —

" I, Allen Tenny, one of the attesting witnesses to the within and foregoing will of John L. Vivian on oath say that I attested the said will and subscribed the same in the presence of the testator and in the presence of the other two subscribing witnesses to said will; that the other two witnesses thereto subscribed and attested said will in my presence in the presence of each other and in the presence of said testator and that said testator at the time of execution of said will was of sound mind and memory and signed and published said will in my presence and in the presence of the other two subscribing witnesses thereto.

" ALLEN TENNY.

" Subscribed and sworn to before me this 24th day of October, 1887.

" LUCIUS BROWN, Notary Public."

By General Statutes, § 545, if any of the attesting witnesses to a will makes and signs such an affidavit " the oath of any such witness so taken shall be accepted by the Court of Probate as if it had been taken before said court."

The Superior Court, on an appeal from the probate of a will, sits in the place of a Court of Probate, and can receive any evidence on matters covered by the reasons of appeal which was or would have been relevant and competent on

the original hearing. *Webster* v. *Merriam*, 9 Conn. 225, 231; *Davis' Appeal*, 39 id. 395, 401; *Mathews' Appeal*, 72 id. 555. The affidavit was therefore properly admitted.

It is true that its reception let in a kind of evidence which the common law excluded from the consideration of a jury. But the right of trial by jury is not violated by reasonable modifications of procedure for the better promotion of justice and public convenience. *Curtis* v. *Gill*, 34 Conn. 49, 54; *State* v. *Cunningham*, 25 id. 195, 203. To make an affidavit of the kind in question competent evidence as to the execution of a will, is a modification of that nature.

Whether the proponents could have rested their proof of the due execution of the will on this affidavit alone, as respects the witness who subscribed it, it is unnecessary to decide, for they did not do this.

Allen Tenny, the affiant, was produced as a witness in the Superior Court, and testified that the testator signed the will (which was dated at Norwich in 1887, the trial taking place in 1901) in presence of three witnesses, one of whom subscribed the name of A. L. Drummond; that he had no recollection whatever as to who this Drummond was, whence he came, or where he now was; and that his testimony that such a person was present and did so sign, was formed not on his remembering the man, but on what appeared from the document itself. Another witness testified that he had looked through the city directories of Norwich from 1883 to 1901, and found no such name as A. L. Drummond, and made diligent inquiries for such a person, but could find no trace of him. The court having found, upon this evidence, that due and unsuccessful search for said Drummond had been made, properly admitted the paper propounded as the will, without requiring the production of Drummond as a witness, or further proof that such a person ever existed. This ruling is amply supported by the lapse of fourteen years since the date of the paper, taken in connection with the testimony above stated.

Evidence was properly excluded of declarations of the testator as to how he came to make the will; that it was made under constraint proceeding from his wife; and that

in certain other matters he had acted under her domination. They were mere hearsay. Declarations evincing kind feeling or hostile feeling on the part of the testator, toward persons named as legatees, are admissible, on an issue as to testamentary capacity or undue influence, as tending to show the probability or improbability that a will containing such dispositions expressed his real wishes and was his real act. *Denison's Appeal*, 29 Conn. 399, 402. But those excluded in the case at bar were of a different kind. The reasons of appeal do not raise the question of general testamentary incapacity, and any evidence from the appellants to show that would therefore have been inadmissible. *St. Leger's Appeal*, 34 Conn. 434, 448; Rules of Court, p. 13, § 13. The declarations were offered to show undue influence, and they were, virtually, declarations that undue influence had been used. The appellants thus sought to establish the existence of an ultimate fact in issue—the use of undue influence—by statements made out of court and by the dead. They were not presented as statements from which inferences of material facts could justly be made. They were not of the nature of verbal acts. They were only important if they could be considered as similar in effect to the direct testimony, as to the main issue, of a witness having the best means of information. We do not think the rules of evidence can safely be stretched so far. See *Comstock* v. *Hadlyme Eccl. Soc.*, 8 Conn. 254, 262. Direct testimony may upon cross-examination lose all its force. A man may give a positive opinion in casual conversation which he would not repeat under oath upon the witness-stand. The declarations of the testator, which were excluded by the trial court, were not expressions of his feeling, but of his judgment. A feeling is a fact; and an ultimate fact. If one says that he loves another, he expresses a sentiment existing at the time when he speaks. A judgment is the result of a mental process acting upon prior events. A man may be mistaken in his judgments of others, or of others' acts: as to what his feelings are towards others he cannot be. One who says that he was induced to execute an instrument, or to put certain provisions in it, by the im-

portunity or overbearing authority of another, states not a fact but a mental conclusion.

It appeared that the testator had long had pulmonary consumption. Evidence of what medicines he was accustomed to use was properly rejected, as immaterial, no claim being made that they were such as to affect his free will or testamentary capacity.

A brother of the testator was asked by the appellants if he knew " what was the attitude of his mind as regards his wife, when she had a mind on any subject." This question was ruled out, and correctly. It called upon $A$ to state if he had formed an estimate of the mental relations of $B$ to $C$, as influenced by certain mental conclusions of $C$ which were not so described as to show their nature or purpose. Such an estimate would be evidence of too remote and conjectural a kind to be entitled to consideration.

The same witness, having testified that he knew as to whether his brother was afraid of his wife, was asked what his condition was in that respect, and replied that for many years before and up to the date of the alleged will, it was such that he gave way to her in everything, for the sake of peace. This answer was stricken out as not responsive. If there was any error in this ruling, it became unimportant when immediately afterwards the appellants were allowed to ask a question which brought the direct reply that " he was in fear of her." This, in the absence of any further attempt to elicit a repetition of the previous answer, made the former ruling immaterial.

Evidence that Mrs. Vivian was insane was properly excluded, in the absence of any offer to show that such insanity contributed to produce the undue influence or constraint which was set up.

Her will, made a few days before her husband's, and giving all her estate to him, was properly admitted in rebuttal. It was a fact tending to show a probable motive for his leaving his property to her. The appellants now urge that no proof had been offered that he ever knew of it. No such point was taken on the trial. Had it been, the court, no doubt,

would have ruled that the jury could only consider it, should they believe that it came to the knowledge of the testator before he executed his own will.

The appellee, in rebuttal, called a witness who was a neighbor and familiar acquaintance of Mr. and Mrs. Vivian, and asked her to state " what the condition of his mind was as to whether he was easily influenced or not," to which she replied that she "never thought so." This was a colloquial mode of stating her opinion as to the testator's mental condition, and the motion to strike the answer out, on the ground that it was simply an opinion, was properly denied. No question was raised as to the means of observation possessed by the witness. One whose mind is in such a condition that he can be easily influenced is especially liable to be constrained by others to act against his own real wishes. Such a state of mind may be habitual. It may be apparent to those who know him well; and if so, it is properly the subject of opinion evidence. *Dunham's Appeal*, 27 Conn. 192, 199; *Turner's Appeal*, 72 id. 305, 315. If, on the contrary, no such state of mind be apparent to those who would naturally observe it, did it exist, their negative opinion is admissible, for similar reasons.

There is no error.

In this opinion the other judges concurred.