## STATE OF CONNECTICUT *v.* CARMI KELLMAN
## (AC 19110)

Foti, Mihalakos and Healey, Js.

Argued October 25, 1999—officially released January 4, 2000

*Neal Cone*, assistant public defender, for the appellant (defendant).

*John A. East III*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *James Dinnan*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Carmi Kellman, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a, carrying a pistol without a permit in violation of General Statutes § 29-35, and criminal violation of a protective order in violation of General Statutes § 53a-110b (a).[1] On appeal, the defendant claims that the trial court improperly (1) instructed the jury regarding intoxication and the affirmative defense of extreme emotional disturbance, (2) denied his counsel's request for surrebuttal final argument and (3) instructed the jury on reasonable doubt. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant and the victim, Carmen Smith, began a two year romantic relationship sometime in 1992, which was marked by repeated domestic incidents, breakups and reconciliations. Numerous complaints were lodged with the police by the victim about the defendant. In July, 1993, after an arrest based on such a complaint, the defendant was ordered by the victim to move out of her residence. The defendant

---

[1] The defendant was found not guilty of one count of stalking in the first degree in violation of General Statutes § 53a-181c (a) (2).

returned during a brief reconciliation, but was dispossessed permanently by the victim later that year.

As the defendant continued to pursue the relationship, his behavior became more hostile, and the domestic incidents increased in severity. In February, 1994, the defendant was arrested outside the victim's residence after being pursued by the police. He had in his possession the victim's house keys. Thereafter, the victim obtained a protective order from the Superior Court, prohibiting the defendant from entering her home and from restraining, harassing or contacting her. The defendant, however, continued to harass the victim on many occasions. Later that month, he forced his way into her house and, in the presence of a witness, struck the victim and took her house keys. The defendant absconded before the arrival of the police following a 911 emergency call. A warrant for his arrest was prepared. Two days later, the defendant was arrested while calling the victim by telephone; he had her house keys in his pocket and her pocketbook was hanging from his neck.[2] Around that time, the defendant purchased, on the street, a .22 caliber pistol with five live rounds and displayed it to the victim. On Saturday, March 12, 1994, the victim and her sister went shopping, had dinner and went to a club for the evening. At approximately 2 a.m. on March 13, they returned to the victim's house, where the defendant was waiting in the driveway. He had his revolver in his pocket and, as he approached the two women, the victim cried out, "No Carmi, no," and "No, don't do it." The defendant pulled out the gun and chased the victim down a walkway alongside the building. The defendant overtook the victim, who was screaming with fright, and exclaimed, "I got you now, bitch." He then fired all five bullets into the victim, causing her death. The shooting occurred at close range, probably two and one-half feet from the victim.

---

[2] The arresting officer was unaware of the protective order in effect.

The following day, the defendant admitted to a friend that he had been involved in the shooting that led to the victim's death. After his arrest, he claimed that the shooting was an unintended mistake. At trial, the defendant claimed that he was suffering from extreme emotional disturbance and that he was intoxicated when he shot the victim.

## I

The defendant claims first that the trial court improperly instructed the jury on intoxication, thereby invalidating the instruction on extreme emotional disturbance. The defendant seeks review of this unpreserved claim by invoking the guidelines of *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), and plain error review. Practice Book § 60-5.

The defendant testified that on the day of the murder, he had consumed two, forty ounce bottles of beer, smoked some marijuana and later had a number of cocktails. The state and the defense submitted identical written requests to charge on intoxication.[3] The court instructed as follows: "Intoxication is not a defense to or an excuse for the commission of a crime. It is only relevant to negate the specific intent which is an element of that particular crime. If you find that the defendant was intoxicated at the time of a crime, you may take this fact into consideration in determining whether

---

[3] The state and defense both requested as follows: "Our statute [General Statutes § 53a-7] provides, insofar as it is relevant here, that intoxication is not a defense to a criminal charge, but in any prosecution for an offense evidence of the defendant's intoxication may be offered by the defendant whenever it is relevant to negate an element of the crime charged. . . . As it applied here, it means that if you find that the defendant was so intoxicated that he was not mentally able even to form the intent to commit the crime, then the intent element of the crime charged would not be proven and you would be required to acquit the defendant of that charge. . . . If, however, you find that he was not intoxicated, or that he was intoxicated but not so extremely so that he could not form the required intent, you should disregard the evidence of his intoxication and not consider it in his defense."

he was in such a state of intoxication as to be incapable of forming the required specific intent, which is a necessary element for the commission of that particular crime. If you believe that the defendant, although intoxicated, was still capable of possessing this specific criminal intent, then his responsibility as to that particular crime is the same as if he were not intoxicated. . . . Any degree of intoxication, not merely total intoxication, may be considered in determining whether the defendant possessed the requisite specific intent. Whether or not the defendant was so intoxicated that he could not and did not form the required intent is a question of fact for you to determine. This instruction does not apply to the defense of extreme emotional disturbance." The defendant did not object or take exception to the instruction.

In explaining the affirmative defense of extreme emotional disturbance, the court instructed the jury in pertinent part as follows: "Extreme emotional disturbance is the emotional state of an individual who was exposed to extremely unusual and overwhelming stress, and has such an extreme emotional reaction to it as a result of which there is a loss of self-control and reason is overborne by intense feelings such as passion, anger, distress, grief, excessive agitation or other similar emotions. . . . It is your responsibility as the triers of fact to decide to what extent, if any, the defendant's emotions governed his conduct at the time he intentionally caused the death of [the victim] if you reach that conclusion. In reaching that decision, you may consider all the feelings which you find, in fact, influence the defendant's conduct, for example, passion, anger, distress, grief, resentment, fright, hatred, excessive agitation or other similar emotions."

"[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review

the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

"[I]mproper jury instructions concerning the defense of extreme emotional disturbance are not of constitutional dimension. *State* v. *Foreshaw*, 214 Conn. 540, 546, 572 A.2d 1006 (1990); *State* v. *Suggs*, 209 Conn. 733, 751, 553 A.2d 1110 (1989)." *State* v. *Austin*, 244 Conn. 226, 244, 710 A.2d 732 (1998). Therefore, the defendant is not entitled to review of his claim under the *Golding* doctrine.

Under the plain error doctrine, we "may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." Practice Book § 60-5. As a general rule, a party cannot be heard to complain about an instruction when he himself has requested it. *State* v. *Shipman*, 195 Conn. 160, 165, 486 A.2d 1130 (1985). "To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Lindstrom*, 46 Conn. App. 810, 817, 702 A.2d 410, cert. denied, 243 Conn. 947, 704 A.2d 802 (1997).

The court's instruction on intoxication constitutes a legally and logically correct statement of the law. The

distinct instruction as to the affirmative defense of extreme emotional disturbance did not, nor was it required to, specifically reference intoxication. It did properly reference and allow the jury to consider "all the feelings which . . . influence the defendant's conduct, for example, passion, anger, distress, grief, resentment, fright, hatred, excessive agitation or other similar emotions."

Our review of the jury instruction as a whole leads us to conclude that there is no reasonable possibility that it misled the jury; the instructions given on intoxication were substantially as requested, and the instruction overall was sufficient to guide the jury to a correct verdict.

## II

The defendant next claims that the court improperly refused his counsel's request to present a surrebuttal argument. Certain additional facts are necessary for the resolution of this issue. Before beginning final argument, defense counsel sought permission to be allowed a surrebuttal argument pertaining to the issue of extreme emotional disturbance, stating, "I have the burden of proof in that regard." The state objected, and the court denied the request. The defendant alleges that the court abused its discretion in denying his request.[4]

As a preliminary matter, let us indicate what this claim does not involve. The defendant's claim does not attack the prosecution's allowance of an opening and closing argument. The defendant makes no claim that the prosecutor's closing arguments were improper. Nor

[4] The defendant also argues that the trial court may have failed to exercise its discretion in denying his request. The brevity of the ruling alone cannot demonstrate that the trial court did not believe it had discretion. The trial court heard from both the defense and the state before ruling. We presume that the trial court acted properly; there is nothing before us to show that it did not exercise its discretion.

does this claim in any manner implicate the defendant's right to be fully heard during his one closing argument. The defendant's claim is that because extreme emotional disturbance is an affirmative defense, which he has the burden of proving, the court abused its discretion in not allowing a divergence from the traditional order of argument. We do not agree.

The defendant bears a heavy burden in demonstrating that the court abused its broad discretion. "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Rogers*, 38 Conn. App. 777, 796, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996).

Although the defendant did not contest at trial that he shot the victim five times and caused her death, the burden to prove the elements of the charge beyond a reasonable doubt nonetheless rested squarely on the state. See *State* v. *Deleon*, 230 Conn. 351, 364, 645 A.2d 518 (1994). The defendant's burden to prove his affirmative defense is by a mere preponderance of the evidence. The state's burden is obviously greater and justifies the traditional positions in the allocation of argument. The defendant concedes that as of the present time, his burden of proof as to an affirmative defense does not entitle him as a matter of law to a surrebuttal argument. He does argue, however, that the ruling "infringed upon his state and federal constitutional rights to due process of law,"[5] in addition to the abuse of discretion claim.

---

[5] The defendant has failed to provide an independent state constitutional analysis for his claim. Accordingly, we consider only his federal constitutional claim. *State* v. *Toste*, 198 Conn. 573, 576 n.3, 504 A.2d 1036 (1986).

The court may vary the order or proceedings upon an adequate showing of cause. Practice Book § 42-35; see also General Statutes § 54-88.[6] The federal constitution requires a strong showing to upset a settled practice on constitutional grounds. *United States ex rel. Parsons* v. *Adams*, 336 F. Sup. 340, 344 (D. Conn.), aff'd, 456 F.2d 257 (2d Cir. 1971), cert. denied, 405 U.S. 1070, 92 S. Ct. 1519, 31 L. Ed. 2d 802 (1972). The defendant neither presented such good cause as to demonstrate an abuse of discretion by the court nor made a strong showing that a surrebuttal argument was necessary to protect his constitutional right to due process of law.

## III

The defendant next claims that the court improperly instructed the jury on reasonable doubt in that its charge diluted the state's burden of proof, and infringed on his right to a fair trial and to fair assistance of counsel.

The court instructed as follows: "Reasonable doubt. The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess or mere conjecture, *nor is [it] a doubt suggested by counsel* or a juror not warranted by the evidence or the lack of evidence. It is such a doubt as in serious affairs that concern you, you would heed. That is such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. It is not hesitations springing from any feelings of pity or sympathy for the accused or for any other person who might be influenced by your decision. *It is, in other words, a real doubt, an honest doubt,* a doubt that has its foundation in the evidence or lack of evidence. It is a doubt that is honestly entertained and is reasonable

---

[6] General Statutes § 54-88 provides: "In any criminal trial, the counsel for the state shall be entitled to open and close the argument."

in light of the evidence after a fair comparison and careful examination of the entire evidence.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require absolute certainty on the part of the jury before it returns a guilty verdict. The law requires that after hearing all the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of the jurors as reasonable men and women a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted. Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rational conclusion." (Emphasis added.)

Our Supreme Court has rejected as meritless challenges to instructions with identical or similar language. See *State* v. *Delvalle*, 250 Conn. 466, 473–76, 736 A.2d 125 (1999);[7] *State* v. *Hines*, 243 Conn. 796, 816–20, 709 A.2d 522 (1998); *State* v. *Small*, 242 Conn. 93, 113–15, 700 A.2d 617 (1997); *State* v. *Taylor*, 239 Conn. 481, 504–505, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997).

The defendant's unpreserved claim has failed to demonstrate that the challenged instructions unconstitutionally diluted the state's burden of proof.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] Our Supreme Court, while rejecting constitutional challenges to the "ingenuity of counsel" instruction, invoked its supervisory authority over the administration of justice and directed trial courts to refrain from using the "ingenuity of counsel" language in the future. *State* v. *Delvalle*, supra, 250 Conn. 476.