[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION BY APPOINTED COUNSEL FOR PERMISSION TO WITHDRAW APPEARANCE
Appellate counsel moves pursuant to section 43-34 of the Practice Book for permission to withdraw her appearance as counsel on appeal for the defendant. This court, after having fully examined the briefs of counsel and of the defendant and having reviewed the transcript of the trial, concludes that the defendant's appeal is wholly frivolous and grants counsel's motion to withdraw.
 I
Attorney Lisa J. Steele, who was appointed appellate attorney for the defendant, reports that she has examined the record for appeal and has discussed the case with both the defendant and his trial counsel . . . Attorney Steele filed a brief in support of her motion to withdraw and gave a copy of the brief to the defendant. The brief shows that appellate counsel has thoroughly and conscientiously examined the record.
The defendant orally addressed the court on January 26, 2000, filed a brief on February 25, 2000, and mailed a letter to the court, dated March 14, 2000. He claims there are appellate issues.
This court adopts the brief filed by Attorney Steele as the basis for the court's finding that the appeal is wholly frivolous. While the brief in this court's opinion sufficiently explains the basis for this court's finding, this court will nevertheless address the points CT Page 4962 raised by the defendant.
 II A
The defendant raises twelve points in support of an appeal. He first argues that he was exposed to highly prejudicial and irrelevant evidence when Detective Hector Teixeira testified that there was a "hit" on the defendant for committing this crime. A review of the relevant part of the transcript (Tr. 7/17/97 at 81-95) shows that Det. Teixeira obtained a written statement from the defendant after advising him of his Miranda rights. After the jury was excused, the court inquired of counsel "Is there either objection to the document as a whole or is there — are there portions of the document that the defense would object to?" After the court ruled that the statement was admissible, the court inquired of counsel "Is there anything within the statement beyond that that you feel is either not relevant or inadmissible?" Defense counsel's response was as follows: "Your honor, if it's going in I guess — I think it'd be best to let it go in all the way." (Tr. 7/17/97 at 87) After the statement was read to the jury, the state's attorney asked Det. Teixeira what he had meant when he had asked the defendant "Did you hear that there was a hit put out on you and Stormy?" (Defendant's response to this question was "Oh man, that's deep. That's crazy. You guys getting me saved my life.") Defense counsel did not object to this question.
The defendant now for the first time claims that this evidence was irrelevant and highly prejudicial. He seeks to have this point reviewed on appeal under the plain error doctrine. This doctrine is codified at Practice Book § 60-5. The doctrine is invoked by appellate courts "in order to rectify a trial court ruling that, although either, not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment." State v. Cobb, 251 Conn. 285 ___ A.2d ___ (1999). "To prevail under the plain error doctrine, the defendant must demonstrate that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice. . . . This doctrine is not implicated and review of the claimed error is not undertaken unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." State v. Kelllman, 56 Conn. App. 279, ___ A.2d ___ (2000). Moreover, where the claim is nonconstitutional, "the defendant must demonstrate that the trial court's improper action likely affected the result of his trial. State v. Cobb, supra at 389. This claim of CT Page 4963 error does not meet the standard.
 B
The defendant claims that the trial court abused its discretion when it failed to strike from the record testimony of Det. Teixeira that "there was a "warrant for a violation of the court' for the defendant." A review of the transcript shows that, during direct examination by the state, Det. Teixeira testified that he interviewed the defendant and obtained a written statement from him. Teixeira was asked "How did you come to speak to the defendant?" He responded: "Okay. The — the defendant came — he had — he had a warrant. He — we had a warrant for a violation of the court." There was no objection to this testimony. The state's attorney told the witness "I don't want to go — I'm not talking about that." Teixeira then related that he spoke to the defendant because the defendant was identified in a photo array as a suspect. (Tr. 7/17/97 at 82, 83).
The defendant seeks to raise this issue under the plain error doctrine. This claim does meet the standard.
 C
The defendant claims there was "prosecutorial misconduct" during closing arguments. The defendant asserts that "the prosecutor manipulated the testimony of its two crucial witnesses in an effort to make their testimony coincide because it was in contradiction of each other. . . . The state put on evidence inferring that the victim was shot close range, yet, the autopsy report and the medical examiner . . . verified that there was no "stippling' found on the victim, disproving the state's theory."
The defendant seeks to raise this issue under the plain error doctrine. This court has reviewed the testimony referenced by the defendant in his brief and the closing argument of the prosecutor. The prosecutor's remarks were not, as the defendant now claims, a "manipulation" of testimony but were fair comment by the prosecutor. Moreover, the trial court in its charge told the jury that arguments of counsel are not evidence and that "it is actually your recollection of the facts that is controlling upon you if you find the facts to be in any way different from what either counsel have argued." (Tr. 7/23-24/97 at 69, 70). This claim does not meet the plain error standard.
 D CT Page 4964
The defendant claims that his "Fifth Amendment rights . . . were violated when the State entered the appellant's statement into evidence." His argument is as follows: "[I]n the statement the appellant made admissions to selling and using drugs . . ., carrying weapons . . . and . . . being home with family on the night of the homicide. . . . The statement was taking (sic) before the appellant's arrest, and had the appellant been put under arrest he would have remained silent and requested to consult with his attorney. As he did after being arrested. . . . The admissions made by the appellant, as to him selling an using drugs, and carrying weapons, was clearly not relevant in anything in the state's case. . . . [T]he court failed . . . to properly weigh the prejudicial probative balance test when admitting the appellant's statement. . . ." This claim is similar to the defendant's first claim.
The defendant seeks to raise this issue under the "plain error" doctrine. The trial properly admitted the defendant's statement after Det. Teixeira explained the circumstances surrounding the statement, which included defendant being advised of Miranda rights and signing a form acknowledging that he waived these rights. (Tr. 7/17/97 at 80-85) The plain error doctrine does not apply.
 E
The defendant claims "the appellant's "due process' rights were violated when state's witness, Jose Rebora, selected the appellant's photo only after being coerced by detectives." The defendant again invokes the plain error doctrine. This court has reviewed the testimony that the defendant has referenced in his brief and concludes that Attorney Steele thoroughly discussed this issue in the brief that she filed in support of her motion to withdraw.
 F
The defendant claims that his ""due process' rights were violated when state's witness, Frederick D'Amico, testified that detectives suggested which photo to select." Frederick D'Amico testified on examination by the state that on the morning of the shooting he was buying drugs in the area where the victim was shot, that as D'Amico walked up a stairway he saw a black man at the bottom of stairs, and that he heard a sound ("one report, which I thought was maybe fireworks going off'). He testified that the defendant did not look like the black man that he saw at the bottom of the stairs. Upon further inquiry, D'Amico testified that he had looked at pictures and CT Page 4965 selected a photograph of the defendant as the black man that he saw on the morning of the shooting. He further testified that he had selected that photograph because a police officer had suggestibly showed me the photograph . . ." He testified that he did not sign one of three statements that he gave to the police because he was only sixty percent sure that the photograph depicted the person that he saw. (Tr. 7/16/97 at 91 — 111). On cross-examination, D'Amico's testimony on the identification issue was summed up by the statement "I don't know." (Tr. 7/16/97 at 114) This court finds that this testimony does not create an appealable issue.
 G
The defendant claims that he "was exposed to prejudicial and irrelevant evidence when state's witness, Polita Rodriquez, testified she spoke with the appellant hours after the homicide about purchasing `coke.'" The homicide victim was shot while inside a car that was parked in a parking area of P. T. Barnum Housing Project. Polita Rodriquez, who lived in P. T. Barnum Housing, testified that moments before the shooting she saw the defendant talking to a person in a car. She further testified that she next saw the defendant that afternoon in her apartment after she had called him "to see if anybody has — somebody else out there had any coke." (Tr. 7/16/97 at 77) She related the conversation she had with the defendant about the shooting.
Again, the defendant invokes the plain error doctrine to present his unpreserved claim that the testimony about "coke" was prejudicial and irrelevant. This evidentiary claim in this court's opinion is not reviewable under the plain error doctrine.
 H
The defendant claims that his ""due process' rights were violated when Detective Teixeira testified that there was no evidence of the state's chief witness being in possession of a gun . . . [D]etectives were told by an informant that the state's chief witness was in possession of the `murder weapon.'"
In support of this claim, the defendant has referenced testimony of Det. Teixeira. When Teixeira was asked while on re-cross examination by the defense what eliminated Richard Guzman as a suspect, Teixeira answered: "Other testimony that we — we obtained that Mr. Pierce is known to be out there dealing and selling drugs, narcotics, known to carry weapons, as provided by other statements. . . . And we had no such CT Page 4966 information on Guzman as far as Mr. Guzman having any weapons." (Tr. 7/17/97 at 111) The defendant asserts that the detective's response that Guzman did not have any weapons was incorrect. The defendant has not pointed to anything in the record to support his assertion. Assuming, aruendo, that the defendant is correct, he still has not shown that this testimony likely affected the result of the trial.
 I
The defendant claims that he "was exposed to highly prejudicial evidence that had no relevancy . . . when the state's chief witness testified that he and the appellant "started, you know, to get high a little bit', just minutes before the crime." Richard Guzman testified on direct examination by the state that he met the defendant at P. T. Barnum, that when they got to Building 16 "we started, you know, to get high a little bit, so I went upstairs to go cop when all this went down." (Tr. 7/17/97 at 56) Guzman testified that he walked upstairs to buy coke from a girl he knew as "Candy." While upstairs, he heard a shot, saw a flash of light, and ducked. He then went downstairs. He saw the defendant standing next to a car with a gun in his hand. Guzman saw a man slumped over inside the car. When Guzman asked the defendant what happened, the defendant explained that the victim did not want to give up his money so he shot him. (Tr. 7/17/97 at 45 — 46).
Again, the defendant argues that this unpreserved claim is reviewable under the plain error doctrine. This claim does not meet the standard.
 J
The defendant claims that "the trial court abused its discretion when it failed to properly perform the probative/prejudicial balance test . . . when allowing in . . . evidence regarding . . . a redapted (sic) portion of state's witness, Jose Rebora, statement for impeachment purposes. The defendant again invokes the plain error doctrine. This issue is thoroughly discussed in Part II of the Brief in Support of Motion by Appointed Counsel for Permission to Withdraw Appearance.
 K
The defendant claims that the trial court abused its discretion when it allowed in evidence that robbery was the motive for the homicide and when it failed to perform a prejudicial-probative CT Page 4967 balancing test. The defendant refers to testimony of Polita Candy Rodriguez where she related that before the shooting, "probably hours before," she saw the defendant and "I ask him, you know, what's wrong. He said he had a headache. He felt like robbing somebody. . . ." (Tr. 7/16/97 at 158 and 159) The trial court carefully considered the relevancy of this testimony on a proffer by the state and observed that the testimony was not relevant. The state's attorney told the court that Richard Guzman would testify that the defendant told Guzman that he had shot the victim because the victim would not give up his money. The court stated that Rodriguez' testimony would be relevant if Guzman so testified. Defense counsel decided not to object to the proffered testimony, which was thereafter presented to the jury with what appears to have been an understanding that relevancy would be established the next day. The next day Guzman testified that the defendant had told him that he shot the victim because the victim would not give up his money.
The defendant argues that this issue should be reviewed under the plain error doctrine. This claim does not met the standard.
 L
Finally, the defendant claims that "the trial court abused its discretion, when it failed to apply the `Asherman' test, when it was first made known that the victim's clothing was not preserved by medical examiners." The defendant argues that the police failed to preserve evidence that might have been helpful in assessing the credibility of a witness and that the court should have addressed the unavailability of the evidence and taken some unspecified action. Since this constitutional issue was not distinctly raised at trial, the defendant must meet either the plain error standard or the review standard of State v. Golding, 213 Conn. 233, 567 A.2d 823 (1989).[1]
Neither standard is met.
In support of this claim, the defendant refers to the following testimony. Dr. Anthony Giangrasso, an assistant medical examiner, testified that he went to the crime scene and examined the body. He noted "there was a single gun shot wound to the left shoulder about one centimeter in size with some stippling around which is sort of a blackening in the area which stays around the edge of the wound. . . . I don't recall whether or not this was just on the skin itself or on clothing [T]his sort of a blackish area . . . indicating probably a close gun shot wound." (Tr. 7/16/97 at 52)
Dr. Malka Shah, an associate medical examiner, performed an autopsy CT Page 4968 on the body of the victim. On direct-examination by the state's attorney, Dr. Shah testified that the victim had been wearing a short-sleeve, black tee-shirt that had a lot of blood stains on it. She did not perform any tests on the tee-shirt. (Tr. 7/17/97 at 8) After the clothing was removed from the body, she cleaned the body. (Tr. 7/17/97 at 10) Prior to washing the site of the injury, she did not see any soot on the body. Since the black tee-shirt was stained with blood, it would have been difficult to see soot on the clothing. (Tr. 7/17/97 at 18) On cross-examination, Dr. Shah testified that she described the gunshot wound in her report as a typical distant gunshot wound. By that, she meant that the muzzle of the gun had to have been far enough away from the body to allow for the fact burning power was not deposited on the body. In her experience, the muzzle on a nine millimeter pistol would have to been less than six inches from the body for there to be soot or stippling on the body. Soot could have been filtered out by clothing. (Tr. 7/17/97 at 21 and 22) The victim's clothing was given to the victim's family. The detective who was attending the autopsy was made aware that the clothing was being returned to the family. (Tr. 7/17/97 at 26). On redirect examination, Dr. Shah testified that when she used the term "distance" in her report, she meant that the weapon was fired about 10 to 12 inches or more from the body. (Tr. 7/17/97 at 27).
Edward Jachimowicz, a firearms and tool mark examiner for the Forensic Science Laboratory at the Department of Public Safety, testified that if the target is 36 inches to 42 inches away from the firearm there would not be any gunpowder residue on the target. He also testified that the amount of residue deposited on the victim would be affected if the weapon was fired from outside the car and the car window was partially up. He further testified that the wearing of a tee-shirt by the victim would serve as a filter and stop all of the gunpowder residue from hitting the skin. (Tr. 7/17/97 at 125-126)
The defendant now argues for the first time that the tee-shirt was critical evidence. Apparently, he claims that testing the tee-shirt for gunpowder residue might have shown the absence of residue and that such evidence would have discredited Dr. Giangrasso's testimony that the victim was shot at close range. Inquiry about gunpowder residue may have served as fodder for cross-examination but it does not show a violation of the defendant's constitutionally guaranteed access to evidence. See State v. Morales. 232 Conn. 707, 714,657 A.2d 585 (1995). The police are not required to preserve every shred of physical evidence. Id. at 723.
 Conclusion CT Page 4969
This court concludes that an appeal would be wholly frivolous and grants appellate counsel's motion to withdraw.
THIM, JUDGE.