ALTHEA S. DINAN *v.* DONAT C. MARCHAND,
ADMINISTRATOR (ESTATE OF ALBERT A.
GAROFALO)
(AC 25754)

Schaller, McLachlan and Peters, Js.

Argued May 23—officially released September 20, 2005

*Richard L. Albrecht*, with whom were *Barbara M. Schellenberg* and, on the brief, *Courtney A. George*, for the appellant (plaintiff).

*Joyce H. Young*, with whom, on the brief, were *W. I. Haslun II* and *Stephen G. Walko*, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The primary issue in this appeal from probate concerns the admissibility of testimony recounting the specific wording of threats allegedly made to the testator in the days before he executed a codicil to his will. The plaintiff, Althea S. Dinan, alleged that the testator, her husband Albert A. Garofalo, was under the undue influence[1] of his daughter, Anne Patten,

---

[1] "Undue influence is the exercise of sufficient control over a person, whose acts are brought into question, in an attempt to destroy his free agency and constrain him to do something other than he would do under normal control. . . . It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence." (Citation omitted; internal quotation marks omitted.) *Pickman* v. *Pickman*, 6 Conn. App. 271, 275, 505 A.2d 4 (1986).

when he executed a codicil to his will in anticipation of his marriage to the plaintiff. The codicil republished the will, which devised nothing to the plaintiff. The plaintiff appeals following the judgment of the Superior Court on appeal from the Probate Court, rendered in accordance with the jury verdict in favor of the defendant administrator, Donat C. Marchand. The plaintiff claims that the court, in addition to excluding improperly testimony regarding Patten's alleged threats, improperly deprived the plaintiff of a final closing argument, instead granting the defendant such argument. We affirm the judgment of the trial court.

At the time the testator executed his will on December 4, 1995, he was a widower with one child, Patten, and three grandchildren. The will named as beneficiaries the testator's granddaughter, Nicole Toth, Patten, and a residuary trust of which Patten was trustee and Patten and the three grandchildren were beneficiaries. Patten was named executrix of the estate, and Toth was named successor executrix. On December 5, 1997, two days before his marriage to the plaintiff, the testator executed a codicil to his will. It provided in relevant part: "I am executing this instrument in anticipation of my marriage to [the plaintiff] on December 7, 1997 and direct that my marriage subsequent to the execution hereof shall not be construed to revoke my will. . . . Except as [previously] specified [in the codicil], my Will shall continue in full force and effect as executed by me on and dated December 4, 1995, without other or further direct or implied amendment, modification or alteration. I hereby reaffirm and republish my Will subject only to the amendments thereof [in this codicil]."[2] The plaintiff and the testator were married as planned.

---

[2] The will did not provide for the contingency of marriage. Absent the codicil, the testator's marriage to the plaintiff would have revoked the will in its entirety; General Statutes (Rev. to 1995) § 45a-257; see also General Statutes § 45a-257e; leaving the plaintiff with an intestate share of the estate, in this case, one-half outright. See General Statutes § 45a-437, which provides in relevant part: "Intestate succession. Distribution to spouse. (a) If there

The testator died on July 21, 2000, survived by the plaintiff, Patten and his three grandchildren. Patten offered the will and codicil for admission to probate on July 25, 2000. The plaintiff challenged the admission of the instruments, but later withdrew her objections while reserving the right to appeal, at which time the instruments were admitted as the testator's will. The Probate Court granted the plaintiff's petition to appeal from the admission of the instruments. Additionally, upon the plaintiff's petition, the Probate Court removed Patten as executrix of the testator's estate and declined to appoint Toth successor executrix. The Probate Court instead named the defendant, an attorney with no beneficial interest in the estate, as administrator c.t.a., d.b.n. The plaintiff made a timely election against the will as surviving spouse. See General Statutes § 45a-436.[3]

The plaintiff appealed to the Superior Court on the ground that the testator executed the codicil to his will "while under the influence, domination and control of Patten, and as a result of this influence, domination and control, unduly and improperly exerted, the will and codicil were not the free and voluntary expression of the testamentary intent of the Decedent." Trial was

is no will . . . the portion of the intestate estate of the decedent . . . which the surviving spouse shall take is . . . (4) If there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse, one-half of the intestate estate absolutely."

We note that for wills executed after January 1, 1997, a testator's marriage after the execution of a will no longer revokes the will. Rather, it remains with a surviving spouse, who is to receive an intestate share in the decedent's estate. General Statutes § 45a-257a (a).

[3] General Statutes § 45a-436, titled, "Succession upon death of spouse. Statutory share," provides in relevant part: "(a) On the death of a spouse, the surviving spouse may elect . . . to take a statutory share of the real and personal property passing under the will of the deceased spouse. The 'statutory share' means a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, after the payment of all debts and charges against the estate. The right to such third shall not be defeated by any disposition of the property by will to other parties. . . ."

held from April 1 to April 8, 2004, following which the jury returned a verdict in favor of the defendant, finding that the will and codicil were executed properly, that the testator had the proper testamentary capacity to execute the codicil and that the codicil was not procured by undue influence. The trial court rendered judgment in accordance with the verdict after denying the plaintiff's motion to set it aside.

I

The plaintiff claims that the trial court improperly excluded testimony by three witnesses relating the wording of threats Patten allegedly made to the testator prior to his execution of the codicil. We reject the plaintiff's demand for a new trial.

"[W]e will set aside an evidentiary ruling only when there has been a clear abuse of discretion. . . . [B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Citation omitted; internal quotation marks omitted.) *Kalams* v. *Giacchetto*, 268 Conn. 244, 249–50, 842 A.2d 1100 (2004).

At trial, the plaintiff testified that she was unaware that the testator had executed the codicil until the two shared a conversation on their honeymoon. When counsel for the plaintiff inquired further as to the conversation, counsel for the defendant objected and the jury

was excused.[4] The plaintiff made the following offer of proof:

"[The Plaintiff's Counsel]: Could you . . . tell the court what the conversation was with [the testator] when you found out about the codicil . . . the evening after you got married? . . .

"[The Plaintiff]: He said to me, I made a power of attorney to Nicole and I did a codicil to my will. And I said, how come? And he said, well, in case anything happened to me, he said, I had to give somebody the authority, and I didn't want to give it to Anne. And he said that Anne raised such holy hell about making a codicil that I had to make the codicil. He said a couple of more things after that, but—

"[The Plaintiff's Counsel]: What else did he say?

"[The Plaintiff]: He said that she threatened him. She wouldn't come to the wedding. She wouldn't bring the grandchildren to the wedding. She was never going to see him again. She wouldn't let the grandchildren have any contact with him or see him. She wouldn't give him the papers that he needed because there was a problem at the [convalescent home the testator owned]. The state was investigating and the state's attorney's office was getting involved.

"[The Plaintiff's Counsel]: She had records of his?

"[The Plaintiff]: Yes, she did.

"[The Plaintiff's Counsel]: And she said she wouldn't—and he told you that she told him that she wouldn't give him the records?

"[The Plaintiff]: That's right. And [the testator's attorney] had problems getting the documents from her that were needed to protect [the convalescent home] from

---

[4] In response to a motion in limine filed by the defendant, the court already had ruled that much of the plaintiff's proffered testimony was inadmissible.

payback to the state of Connecticut for the problems that she [Patten] had created . . . .

"[The Plaintiff's Counsel]: This was told to you on Sunday night?

"[The Plaintiff]: Sunday night."

The defendant objected on several grounds, arguing that the testator's statements were inadmissible under *Dale's Appeal from Probate*, 57 Conn. 127, 140, 17 A. 757 (1888), the dead man's statute; General Statutes § 52-172;[5] and because they constituted hearsay within hearsay.[6] The plaintiff responded that the testator's statements were being offered not for the truth of the matter asserted therein, but as proof of the testator's state of mind when he executed the codicil several days before making the statements.

The court excluded as inadmissible hearsay the portion of the plaintiff's testimony reporting the testator's statement regarding Patten's threats, concluding that the testator was not relating his state of mind, but rather, a conversation. In so doing, the court relied on *Vivian's Appeal*, 74 Conn. 257, 50 A. 797 (1901), which similarly concerned the exclusion of hearsay declarations by the testator regarding the exertion of undue influence. Our Supreme Court stated that "[e]vidence was properly excluded of declarations of the testator as to how he came to make the will; that it was made under constraint proceeding from his wife; and that in certain other matters he had acted under her domina-

---

[5] General Statutes § 52-172, titled, "Declarations and memoranda of deceased persons," provides in relevant part: "In actions by or against the representatives of deceased persons . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence. . . ."

[6] Connecticut Code of Evidence § 8-7, titled, "Hearsay within Hearsay," provides: "Hearsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception."

tion. They were mere hearsay." Id., 260–61. The court also excluded the testimony on the basis of the rule of *Dale's Appeal from Probate,* supra, 57 Conn. 140, and its progeny, which excludes from evidence the admissions against interest of one legatee that might affect adversely the interests of other legatees. See *Carpenter's Appeal,* 74 Conn. 431, 434, 51 A. 126 (1902); *Livingston's Appeal from Probate,* 63 Conn. 68, 76, 26 A. 470 (1893). The court in the present case relied on the dead man's statute and the nonhearsay use of "state of mind" in allowing the plaintiff to testify about a significant portion of her conversation with the testator.

After the jury returned, the plaintiff was allowed to testify as follows regarding the conversation she had with the testator:

"[The Plaintiff's Counsel]: Did [the testator] say he had a conversation with [Patten]?

"[The Plaintiff]: Yes.

\* \* \*

"[The Plaintiff's Counsel]: Did he say how he felt or what he feared or anything of that nature as a result of these conversations with [Patten]?

"[The Plaintiff]: He was afraid that she would—he would not see her, he would not see his grandchildren, she would not give him the documents that he needed because the state was investigating [the convalescent home] . . . . He was frightened and he said [that] that's what he was afraid of.

"[The Plaintiff's Counsel]: And did he say that fear had anything to do with signing the codicil?

"[The Plaintiff]: Yes, that's the reason he did.

\* \* \*

"[The Plaintiff's Counsel]: . . . Did you have any further conversation about that on the honeymoon?

"[The Plaintiff]: He said he was sorry he did it.

"[The Plaintiff's Counsel]: Okay. Anything else?

"[The Plaintiff]: He said that he'd take care of it when we came back from the honeymoon."[7]

Thereafter, the plaintiff sought to introduce testimony by Constantine Scarveles, a handyman and driver frequently employed by the testator, recounting the substance of a conversation he testified that he had overheard between the testator and Patten in the testator's office during the days immediately preceding the execution of the codicil. Patten previously had testified that she had not been to see the testator for at least three months prior to his executing the codicil. The court allowed Scarveles to testify as to what he had observed, but again excluded, on the basis of *Dale's Appeal from Probate*, supra, 57 Conn. 140, testimony of the words Patten actually used. Thereafter, Scarveles testified that he had observed a loud argument between the testator and Patten and that the testator used words to the effect of "don't threaten me, don't yell at me."

Jean Hall, an employee of the convalescent home, also testified that she observed an argument between Patten and the testator in the days prior to the execution of the codicil. The court again excluded testimony regarding Patten's actual words[8] but allowed Hall to testify that the testator spoke during an argument about "changing the paper." Hall testified on cross-examination that she recalled Scarveles being present at the

---

[7] There was testimony at trial that the testator drafted and executed a later will devising half of his estate to the plaintiff. That will never was found and, as such, evidence of its existence and of its dispositive provisions was allowed only as circumstantial proof of the testator's state of mind when he executed the codicil.

[8] The plaintiff made no offer of proof of the testimony either Scarveles or Hall would have given, if allowed, relating Patten's specific words to the testator.

time of the argument and that, by "changing the paper," she was referring to the codicil.

## A

We first consider the admissibility of the proffered testimony of the plaintiff, Scarveles and Hall relating Patten's alleged threats in light of the rule of *Dale's Appeal from Probate*, supra, 57 Conn. 140. *Dale's Appeal from Probate* does not apply, as its facts distinguish it from this case. The court, therefore, improperly excluded the testimony on the basis of that rule. The error, however, was harmless.

*Dale's Appeal from Probate* was an appeal from probate involving both a challenge to the testatrix' testamentary capacity and a claim of undue influence. Id., 129. The Supreme Court held that the Superior Court properly excluded evidence of a legatee's earlier declaration before the Probate Court that the testatrix was without testamentary capacity. Id., 140. The court reasoned that the legatee's admission against interest would have potentially affected the inheritance of the other two legatees, thereby causing them to suffer an injustice. Id. "[I]nasmuch as the law has compelled [the other legatees] to submit their several and individual rights of property in this estate to the issue of a proceeding which also determines those of [the declarant], it, in avoidance of great injustice, has suspended in their favor the operation of the rule that a party to a proceeding may prove the admissions of his adversary. Of necessity, the use of [the declarant's] admission against him would be to use it against all other legatees; and the appellant may not enforce his right against [the declarant] at the expense of [the other legatees]. If there be a misfortune in the situation, it must be upon the appellant." Id.

In *Livingston's Appeal from Probate*, supra, 63 Conn. 76, the declarant was a legatee alleged to have unduly

influenced the testatrix. The court excluded testimony of his admission against interest on the ground that it might have affected negatively the interests of the other legatees, with whom the declarant's interests were not aligned. Id. The court remarked that "of necessity the use of the admission would be in effect to use it against all other legatees. Such would clearly have been the practical operation, since the contest was against the whole will, and the claimed statement related to the will as a whole." Id.

In arguing in favor of the application of that rule, the defendant brings to our attention the practical result of the plaintiff's successfully contesting the codicil. The codicil prevented the revocation of the will by operation of law at the time of the plaintiff's marriage to the testator. See footnote 2. The successful contestation of the codicil, thus, would render the testator intestate. Application of the intestacy statutes would result in an equal distribution of the estate to the plaintiff and Patten. See General Statutes §§ 45a-437[9] and 45a-438.[10] Toth, to whom the testator specifically devised his home, and the three grandchildren as beneficiaries of the residuary trust, would be disinherited.

This case shares in common with *Dale's Appeal from Probate* the fact that one legatee's words were offered into evidence in an effort to contest the validity of a will, and those words potentially had adverse effects on the interests of other legatees. Patten's interests under the will and codicil were not the only interests which the evidence, if admitted, might have affected

---

[9] See footnote 2.

[10] General Statutes § 45a-438 (a) provides in relevant part: "After distribution has been made of the intestate estate to the surviving spouse in accordance with section 45a-437, all the residue of the real and personal estate shall be distributed in equal proportions, according to its value at the time of distribution, among the children and the legal representatives of any of them who may be dead . . . ."

adversely. See *Carpenter's Appeal,* supra, 74 Conn. 434. The rule of *Dale's Appeal from Probate,* however, applies more narrowly than that. It is distinguishable from this case because of the nature of the declarant's words. *Dale's Appeal from Probate* and cases following it all have involved a statement, or admission, against pecuniary or proprietary interest by the legatee, in which the legatee stated that the testator lacked capacity or was under undue influence at the time of execution and then later sought to take under the will. Patten's alleged declaration, however, was not an admission against interest. See Conn. Code Evid. § 8-6 (3).[11] Rather than being an admission that the codicil was invalid, it is a statement by a legatee that the plaintiff asserts provides a basis on which the court should declare the codicil invalid. Patten has maintained at all times that the will and codicil were properly executed and never has stated that the testator was under the undue influence of herself or any other person. Had she made such a statement, the rule in *Dale's Appeal from Probate* would apply. See, e.g., *In re Dolbeer's Estate,* 153 Cal. 652, 662, 96 P. 266 (1908) (evidence of declaration against interest by legatee that testatrix was insane properly excluded). Thus, the court improperly excluded the witnesses' testimony relating Patten's alleged threats on that ground.

On the issue of harmfulness, we conclude that the court's improper ruling was harmless with respect to

[11] A statement against civil interest that is admissible as an exception to the hearsay rule must be "[a] trustworthy statement that, at the time of its making, was against the declarant's pecuniary or proprietary interest, or that so far tended to subject the declarant to civil liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true. In determining the trustworthiness of such a statement the court shall consider whether safeguards reasonably equivalent to the oath taken by a witness and the test of cross-examination exist." Conn. Code Evid. § 8-6 (3). Patten's alleged threats were not against her pecuniary interests at the time of their making because their purpose was to protect a will in which she had an expectancy. The threats also did not tend to subject Patten to civil liability.

the plaintiff's testimony because, as we conclude in part I B, it properly was excluded as hearsay. As for the testimony of Scarveles and Hall, because no offer of proof was made as to either, we cannot determine whether the court's ruling, assuming impropriety, was harmful.[12]

B

We next consider whether the court improperly excluded the plaintiff's proffered testimony on the ground that it constituted inadmissible hearsay. We conclude that the court's decision was proper.[13]

The plaintiff argues that her testimony relating the testator's description of Patten's alleged threats should not have been excluded as hearsay because it was offered not for the truth of the matter stated therein, but for the effect of the threats on the testator. Essentially, the plaintiff argues that the truth of whether Patten intended to carry out her threats was irrelevant, and instead, the fact that they were made is important to this case. Although we agree that the truth of Patten's intent to carry out the alleged threats is irrelevant and the issue of whether they were made is relevant, the

---

[12] Even if we were to assume that Scarveles and Hall would have testified that Patten made the threats described in the plaintiff's offer of proof, the same information was before the jury due to the plaintiff's testimony. In it, she described the testator's account of his argument with Patten and that, as a result of the argument, he was afraid that he would suffer the allegedly threatened results unless he executed the codicil. Furthermore, Scarveles and Hall were allowed to testify, as noted, that they observed an argument between Patten and the testator and, further, recounted the testator's words which were damaging to the defendant's case. As such, given an adequate record for review, any error in excluding Patten's actual words likely would have been harmless.

[13] If anything, the court improperly admitted more of the plaintiff's testimony relating the testator's statements than was proper, thus aiding the plaintiff's case. In *Vivian's Appeal*, supra, 74 Conn. 260–61, testimony of a testator's statement that he executed a will under undue influence was excluded as hearsay. Much of the plaintiff's admitted testimony relating the testator's statement was excludible under the reasoning of *Vivian's Appeal*.

plaintiff has failed to provide a hearsay exception or nonhearsay use for the second out-of-court statement, in which the testator related his argument with Patten to the plaintiff.

There are two out-of-court declarations in the plaintiff's proffered testimony. A hearsay exception or nonhearsay use is necessary for each. See Conn. Code Evid. § 8-7; see also footnote 6. The first is Patten's alleged threats to the testator. The second is the testator's declaration relating the alleged threats to the plaintiff. We agree with the plaintiff that there is a valid nonhearsay use for the first out-of-court declaration, namely, that it is offered not for its truth, but for its effect on the testator. "An out-of-court statement is not hearsay . . . if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted." (Internal quotation marks omitted.) *State* v. *Nims*, 70 Conn. App. 378, 390, 797 A.2d 1174, cert. denied, 261 Conn. 920, 806 A.2d 1056 (2002); see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.9.1, pp. 577–78. The plaintiff, however, attempted to testify as to the content of a conversation she had with the testator. In so doing, she attempted to testify to the truth of the matter that the testator related to her, which constitutes hearsay.

The plaintiff argues that Conn. Code Evid. § 8-3 (4),[14] the exception for a then-existing mental or emotional condition, provides an exception for the testator's declaration. We disagree. The two fatal flaws with that

---

[14] Connecticut Code of Evidence § 8-3, titled, "Hearsay Exceptions: Availability of Declarant Immaterial," provides in relevant part: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness . . . (4) Statement of then-existing mental or emotional condition. A statement of the declarant's then-existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed."

argument are, first, that the testator's statement to the plaintiff did not relate his *then*-existing mental or emotional condition, and second, that the excluded portion of the testator's statement was not one of his state of mind. Rather, it related his *past* mental or emotional condition following a conversation. "Testimony of a statement of a decedent may be introduced to show his or her state of mind *at the time the statement was made.*" (Emphasis added.) C. Tait, supra, § 8.19.4 (a), p. 627. The testator's state of mind some three days after executing the codicil was not, therefore, admissible.[15]

## II

The plaintiff also claims that the court improperly sequenced closing arguments and allowed the defendant a final closing argument. Following the close of evidence, the defendant was allowed to make his closing argument first, followed by the plaintiff. The defendant then was allowed a final closing argument and the plaintiff was not.

The plaintiff argues, as she did to the trial court, that because she bore the burden of persuading the jury that the codicil was the product of undue influence, she was entitled to first and final closing arguments and that the defendant was entitled only to one closing argument. The defendant counters that, as the proponent of the instrument, he bore the burden of persuading the jury that the codicil was properly executed and that the testator had testamentary capacity, and, therefore, the court had the discretion to order first and final closing arguments to either party. We agree with the defendant.

---

[15] We note parenthetically that, to the extent the testator stated a present intention to undo the codicil in some manner, the plaintiff was allowed to testify to that. We further note that the oft-misunderstood dead man's statute "does not create a hearsay exception for statements of dead witnesses." C. Tait, supra, § 8.47.2, p. 727.

We apply the standard of review applicable to similar claims in criminal cases because the wording of Practice Book § 42-35 is nearly identical to the section governing closing arguments in civil cases, namely, Practice Book § 15-5 (a). The plaintiff bears a heavy burden in demonstrating that the court abused its broad discretion in its ordering of closing arguments. See *State* v. *Kellman*, 56 Conn. App. 279, 286, 742 A.2d 423, cert. denied, 252 Conn. 939, 747 A.2d 4 (2000). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) Id.

Practice Book § 15-5 (a) provides in relevant part that "[u]nless the judicial authority for cause permits otherwise, the parties shall proceed with the trial and argument in the following order: (1) The plaintiff shall present a case in chief. (2) The defendant may present a case in chief. (3) The plaintiff and the defendant may present rebuttal evidence in successive rebuttals, as required. . . . (4) The plaintiff shall be entitled to make the opening and final closing arguments. (5) The defendant may make a single closing argument following the opening argument of the plaintiff. . . ."

At trial, the defendant proceeded first with his case-in-chief, in which he bore the burden of persuasion as to the testator's proper execution of the will and codicil and as to the testator's testamentary capacity at execution. The plaintiff then presented her case-in-chief as to her claim of undue influence. Thereafter, each side was allowed to put on rebuttal evidence, after which evidence was closed and the parties delivered their closing arguments as previously described.

Although the proper execution and testamentary capacity were not hotly contested issues, the defendant nonetheless had to prove them. Thus, the defendant bore an initial burden of persuasion to establish the validity of the will and codicil. Thereafter, the plaintiff bore the burden of persuading the jury that the codicil was procured by undue influence. Although the issue of undue influence was the primary issue of the case, we conclude that because each side bore a burden of persuasion, the court properly could have ordered closing arguments either way in its broad discretion.

Furthermore, it has traditionally been the case that the will proponent proceeds prior to the will opponent. "On an appeal from the probate of a Will, the proponent should open and close even though he or she may be the appellee. The proponent has the affirmative burden of proof as to the validity of the Will." 8 R. Folsom, Connecticut Estates Practice, Probate Litigation (1992) § 7:9, p. 276. The court reasonably followed that traditional rule. We accordingly conclude that the court did not abuse its discretion in allowing the defendant first and final closing arguments.[16]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[16] Even if the court improperly favored the defendant with a final closing argument, the error was harmless. Counsel for the defendant spoke only very briefly in his final closing argument and did not rebut anything substantive that counsel for the plaintiff stated in his closing argument. Counsel thanked the jurors for their service, reminded the jury that closing arguments are not evidence, asked them to deliberate fairly and honestly, and concluded with the following retort to a statement made by counsel for the plaintiff in his closing argument. "Now, [counsel for the plaintiff] stated in his closing argument . . . that [the plaintiff] never took much from the table. She brought much to the table in this two and one-half [year] marriage with [the testator], but she took very little from it. And I suggest to you, members of the jury, that this appeal that [the plaintiff] has brought is now [the plaintiff] taking what [she] thinks she is due from the table."