## JOSEPHUS CRAFT'S APPEAL FROM PROBATE.

By statute (Rev. of 1875, p. 439, sec. 28,) in suits by or against the representatives of deceased persons, written memoranda of the deceased, relative to the matter in issue, may be received in evidence. A statement in the handwriting of a deceased person was found among his papers, on which was a memorandum that he had previously written it on his slate. There was nothing to show when it was copied nor whether it was a true copy. Held to be admissible.

The memorandum, though purporting to have been previously written upon the slate, was yet, being in the handwriting of the deceased, an original memorandum.

Such memoranda are admissible whenever made, and even though numerous and conflicting; the triers giving them such weight as, in view of their character and the circumstances, they seem to deserve.

In a suit by an endorsee to recover the amount of a promissory note given by the defendant for a number of patented machines, the defendant claimed that, by a collateral agreement, signed by the party to whom he gave the note, he was not to pay the note unless he sold the machines, and that the plaintiff when he took the note was chargeable with notice of the facts. The plaintiff claimed that he took the note before due, for a valuable consideration, and with no knowledge of any such agreement. The court charged the jury that if there was, on the part of the plaintiff, a willful or fraudulent neglect to inquire into the circumstances, where they were known to be such as to call for inquiry, then, if they thought such neglect was from a belief that by such inquiry the note would be found to be invalid, they might regard it as a case of general notice that the note was vitiated by some illegality or fraud; that mere negligence, however gross, not amounting to willful blindness, would not be enough; and that if there was negligence, yet if the purchase was made in good faith and in the regular course of business, it was good. Held that the plaintiff could not complain of the charge.

APPEAL from the doings of commissioners upon the estate of Lyman Latham, deceased, in disallowing a claim presented by the appellant; taken to the Superior Court in Hartford County.

The appellant, in his reasons of appeal, stated his claim to be "upon a promissory note made by said Latham in his life time, to wit, on the first day of March, 1871, by which he promised to pay, six months after date, to the order of C. B. Mahan, agent, two hundred dollars at the First National Bank of Hartford, Ct., for value received in Granite mowing machines, which note was, before the payment thereof, and before it became due, to wit, on the second day of March, 1871, endorsed by said C. B. Mahan, agent of the Granite Agricultural Works, and delivered and sold to said appellant, who, at the time last aforesaid, discounted and purchased said note of said C. B. Mahan, agent, and paid to him a valuable consideration therefor."

The appellee, the administrator upon the estate of the said Latham, filed the following plea:—

"And now the defendant, admitting the execution and delivery of the note mentioned in the reasons of appeal filed in said case, and that the same was presented to and rejected by the commissioners on said estate, defends, pleads and says that the said appellant of having and maintaining his said appeal ought to be barred, because he says that said note was given to the said Mahan, under and by virtue of a certain written agreement, a copy whereof is hereto annexed, wherein it was agreed that said note should only be paid by said Latham if he was able to sell sufficient of the machines mentioned therein on the 1st of September succeeding the date of said note, and if not, was to be given back to said Latham; that said Latham did not sell sufficient of said machines so to pay for said note, but failed so to do; and that said note was utterly and entirely without any consideration, and the same was sold to the appellant by said Mahan, with full knowledge on the part of the appellant of all said facts, and the appellant and said Mahan conspired together to obtain said notes by false pretences, and to endeavor to collect the

same, by pretending that the appellant was a *bonâ fide* holder of said note."

The case was tried to the jury, before *Loomis, J.*

Upon the trial, for the purpose of showing that the appellant had knowledge of a failure of consideration of the note, as between the maker, Lyman Latham, and the payee, The Granite Agricultural Works, and of the agreement referred. to in the plea of the appellee, the appellee offered in evidence the following memorandum in the handwriting of Latham:—

"June 18th, 1871. I was at Northampton and saw Mr. Crafts.   Asked him about notes that he claimed to hold against me.   He said that he had but one, and that was the note that he gave me a copy of.   I asked him how he got these notes.   Said they were left with him as collateral, and after I found that they were good, by writing to you, and getting the letter from you, and enquired of different parties, and also of Mr. Wm. A. Allen, I concluded to buy them, which I did at a small discount.   I spoke to him about the letter that I wrote in answer to his.   I said it read that.I had some notes out, given for Granite mowing machines, and if I sold machines enough to come to the notes, they would be paid at maturity; otherwise they would not.   He said that the letter did not say so.   I asked him what it did say. He said that they would be paid at maturity.   I told him I guessed not.   He said it was so, and we didn't contend about it, neither did I ask him to see the letter.   Wrote this on my slate, the 20th day of June, 1871."

The appellant objected to the admission of this memorandum; 1st, because it was merely a copy, and not the original made by Latham, at the time and place of the conversation therein recited; 2d, because no proof of the loss of the original from which this pretended copy was taken, was offered in evidence; and 3d, because no proof was offered to show that the memorandum was a correct copy of the original.   The court overruled the objection, and admitted the memorandum.

Upon the argument of the case the appellant requested the court in writing to charge the jury as follows:

" That if the appellant took the note before due for a valuable consideration without knowledge of any defect of title, and in good faith, he holds it by a valid title. That suspicion of defect of title, or the knowledge of circumstances which would excite suspicion in the mind of a prudent man, or gross negligence even, on the part of the appellant as taker at the time of the transfer, will not defeat his title. That if he took the note without inquiry, and under circumstances which ought to have excited the suspicions of a prudent and careful man, this will not defeat his title. That result can be produced only by bad faith on his part. That the appellant was not bound at his peril to be upon the alert for circumstances which might possibly excite suspicion."

But the court did not so charge the jury, but instructed them as follows :

"In regard to notice there is some controversy. I will adopt the elementary doctrine, which recognizes two kinds,—First—particular or explicit, where the purchaser has knowledge of particular facts in regard to the note, as in this case, if the appellant had been advised of the terms of the original agreement. Second—general or implicit, where a holder has knowledge that there was some illegality or fraud which vitiated the note, though he was not apprised of its nature.

" If there was a willful or fraudulent failure to inquire into circumstances, where they were known to be such as to invite inquiry, the jury, if they thought that such abstinence was from the belief that such inquiry would result in finding that the note was invalid, would regard it as a case of general notice. Mere negligence, however gross, not amounting to this willful or fraudulent blindness, will not, of itself, amount to notice, though the jury should consider the fact of such negligence, as it may tend to prove such general notice. But if, after all, though there was negligence, the purchase was yet *bonâ fide*, honest, and in the regular course of business, it is good."

The jury having returned a verdict for the appellee, the appellant moved for a new trial for error in the rulings and charge of the court.

*Hall* and *Galpin*, in support of the motion.

1.   The first question arising upon the motion, is as to the admissibility of a certain memorandum offered by the appellee, under the following statute:—" In suits by or against the representatives of deceased persons, the entries and written memoranda of the deceased, relevant to the matter in issue, may be received as evidence." Under the common law rules such evidence was inadmissible.   Prior to 1850, such memoranda were inadmissible as evidence in this state. Nor are they yet admissible in any other state of the Union. In admitting such evidence, therefore, the court should not enlarge the intent of the legislature.   *Bissell* v. *Beckwith*, 32 Conn., 516.   It was not intended that a copy of such memorandum, without proof of the loss, or of the making of the original, or proof of its being a correct copy, should be admissible.   2 Phill. Ev., 927 ; *Jones* v. *Stroud*, 2 Car. & P., 196.   The evidence of its being a copy is upon the paper itself.

2.   The court should have charged the jury in accordance with the request of the appellant.   The law governing negotiable paper has, with the growth of commerce, undergone great changes, both in this country and in England, during the last half century.   It has, however, become settled by the highest courts of the two countries, and in accordance with the doctrine claimed by us.   *Swift* v. *Tyson*, 16 Peters, 1 ; *Goodman* v. *Simonds*, 20 How., 363 ; *Murray* v. *Lardner*, 2 Wall., 121 ; *Smith* v. *Sac County*, 11 id., 139; *Goodman* v. *Harvey*, 4 Adol. & El., 870.   All the states of any commercial importance have followed with like decisions.   *Magee* v. *Badger*, 34 N. York, 247 ; *Phelan* v. *Moss*, 67 Penn. S. R., 59 ; *Morehead* v. *Gilmore*, Albany Law Jour., Feb. 27, 1875, p. 145 ; *Hamilton* v. *Vought*, 34 N. Jer. Law, 187 ; *Worcester Co. Bank* v. *Dorchester Bank*, 10 Cush., 491 ; *Belmont Branch Bank* v. *Hoge*, 7 Bosw., 543 ; *Matthews* v. *Poythress*, 4 Geo., 287 ; *Ellicott* v. *Martin*, 6 Maryl., 509 ; *Crosby* v. *Grant*, 36 N. Hamp., 273 ; *Miller* v. *Finley*, 26 Mich., 249 ; Parsons on Notes & Bills, 257, 280.   Whenever, since 1836, the law upon this subject has been well considered, such have

been the decisions of the courts. From 1824 to 1836 a different rule prevailed. Hence the decision of *Hall* v. *Hale*, 8 Conn., 340. But in *Brush* v. *Scribner*, 11 Conn., 391, the court in 1836 substantially overruled that decision. See 2 Parsons on Notes & Bills, 277. Not, however, coming up to the rule as laid down by the Supreme Court of the United States. And the court went still further in the case of *Roberts* v. *Hall*, 37 Conn., 205. In the case at bar the appellant asked the court to charge the jury as held by the United States Supreme Court, and nearly in the language of the court. Notice under the rule as laid down by that court is tantamount to *knowledge*. The court in *Goodman* v. *Simonds*, 20 Howard, 366, say:—"The proper inquiry is did the party seeking to enforce the payment have *knowledge* at the time of the transfer of the facts and circumstances which impeach the title as between the antecedent parties to the instrument." And in *Murray* v. *Lardner*, 2 Wallace, 121, the same court lays down the rule as follows:—"Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker, at the time of the transfer, will not defeat his title." Whether the courts of this state will adopt the law as stated by the Supreme Court of the United States, or the law as embodied in the instructions of the court below, is the real question arising upon this part of the motion. Connecticut being a state of large commercial interests, should adopt the law as it has become modified by the necessities of business and commerce.

*Perkins*, contra.

1. As to the admission of the memorandum made by Latham. It is claimed that this is a copy of another memorandum. It does not appear to be, from any entry upon it, nor by any finding. The entry at the bottom, that he wrote it on his slate June 20th, does not of itself show that the paper in question was written either before or after the 20th, or that it was copied from the slate. Either or both may have been

original memoranda.  But however the fact may be it is of no consequence.  Any memorandum which the deceased made before his death is admissible in evidence by the express terms of the statute, and it is agreed that this is one which he made.

2.  The other question, which is a very important one, is as to the rule of law to be adopted in this state in regard to the transfer of negotiable paper, and how far the old rule as formerly settled here is to be altered.  *Hall* v. *Hale*, 8 Conn., 336; *Roe* v. *Jerome*, 18 id., 138.  It does not become necessary for the court to fix the precise rule in this case; they have only to say whether the charge of the judge injuriously affected the rights of the plaintiff.  It would seem that there could be little doubt that it did not.  He went much further than this court have ever yet done, and as far as any court has gone.  The substance of his instructions was, that the jury must either find that the appellant had actual knowledge of the invalidity of the note, and the precise facts which made it invalid, or that he must have known that the note was invalid, and have had means of knowing the precise reason, but wilfully refused to examine into it for the reason that if he did examine, he would find it out, and that gross negligence in omitting to enquire would be evidence of such intention.  It would seem as if a person who bought a note with knowledge that it was invalid, could not be a *bonâ fide* purchaser, although he did not know the precise facts which invalidated it, and did not have any special knowledge as to where he could get exact information.  If he *knew* the note was invalid, he certainly did not buy it in good faith, supposing it was good.  An analysis of the cases in the United States courts, and elsewhere, will show that no court has laid down so narrow a rule as the judge at the circuit did here.  If this court is in this case to establish the rule for this state, we submit that this is going altogether too far.  The proper protection of the public from such frauds as we claim this to be, which have become so common, requires that the court, or jury, should have some latitude in considering all the facts and circumstances connected with the case, and decide in each case, as a question of fact, whether the note

was taken in good faith, without notice, and in the regular course of business; and in deciding this, all evidence tending to show or disprove these facts, should be submitted and taken into consideration. But if a rule of law to cover all cases is to be settled, we submit that no better rule can be found than the following laid down by Chief Justice Shaw, in *Merriam* v. *Granite Bank*, 8 Gray, 254:—"But this rule is to be taken with the strict qualification that the negotiable security be taken in the due course of business, without notice, or reasonable cause to suspect, that the party from whom it is taken has not the full title which the possession of the note, and the names borne upon it, naturally import."

PARDEE, J. The statute, (Rev. of 1866, p. 35, sec. 168,) provides, that "in suits by or against the representatives of deceased persons, the entries and written memoranda of the deceased relevant to the matter in issue, may be received as evidence; subject in regard to weight and credit to the rules under which the testimony of parties and other interested evidence is received."

A conversation occurred between the appellant and the deceased on the 18th day of June, 1871, concerning the note in controversy. Of this conversation the deceased made a memorandum upon his slate two days after it occurred, and subsequently made another upon paper, which is the one offered in evidence. The statute is quite comprehensive; it puts no limit to the number of memoranda which a man may make concerning a particular transaction, and leave behind him; as many as he leaves are admissible in evidence, each for what it weighs. Every memorandum so left is an original; it is admissible by reason of its own existence; not because it is the first of a series, nor because it is a copy of a previous one; but simply because the deceased made and left it. If there be several memoranda concerning the same transaction, and each varies from every other, or if all are in exactly the same language, all are alike admissible, and counsel will draw such inferences from and base such arguments upon the variance or the coincidence as the facts will support. Therefore, as

the relation of original and copy is not established by statute between the memorandum on the slate and the one upon paper which was offered in evidence, the law which governs that relation is not applicable here.

Nor does the statute put any limit to the length of time which may elapse between the doing of an act and the making of a memorandum concerning it.   Days, weeks, even years may intervene.   If made and left it must be admitted and weighed in view of all the circumstances attending it.

And we are of opinion that the appellant has suffered nothing by reason of any thing contained in or omitted from the charge of the judge upon either of the two points presented in it, namely, bad faith and gross negligence.   Upon the latter language could not strengthen the charge, unless indeed the adjective "gross" had been again applied to the word "negligence" in the last paragraph; but the two had been so distinctly joined in the preceding sentence as to leave no doubt in the mind of any hearer that they were to be considered as connected for all the purposes of the charge.

This conclusion renders it unnecessary for us to determine, or even consider, the claim made by the appellee, that the charge is too favorable to the appellant.

A new trial is not advised.

In this opinion the other judges concurred, except PHELPS, J., who did not sit.