ALTHEA S. DINAN *v.* DONAT C. MARCHAND,
ADMINISTRATOR (ESTATE OF
ALBERT A. GAROFALO)
(SC 17536)

Borden, Norcott, Katz, Palmer and Vertefeuille, Js.

Argued April 10—officially released August 22, 2006

*Richard L. Albrecht,* with whom were *Barbara M. Schellenberg,* and, on the brief, *Courtney A. George,* for the appellant (plaintiff).

*Joyce H. Young,* with whom, on the brief, was *W.I. Haslun II,* for the appellee (defendant).

*Opinion*

KATZ, J. The plaintiff, Althea S. Dinan, appeals, following our grant of certification, from the judgment of the Appellate Court affirming the judgment of the trial court, rendered after a jury trial, in favor of the defendant, Donat C. Marchand, administrator of the estate of Albert A. Garofalo (testator). *Dinan* v. *Marchand,* 91 Conn. App. 492, 881 A.2d 503 (2005). The plaintiff had claimed that the will and codicil of her husband, the testator, improperly had been admitted to probate because the testator was under the undue influence[1] of his daughter, Anne Patten, when, in anticipation of his marriage to the plaintiff, he executed the codicil, thereby republishing his will that had devised nothing to the plaintiff. The plaintiff claims that the Appellate Court improperly concluded that the trial court properly had excluded certain testimonial evidence regarding threats allegedly made to the testator by his daughter in support of the claim of undue influence: (1) testimony from the plaintiff, offered under the dead man's statute, General Statutes § 52-172,[2] and as state of mind evidence; and (2) testimony from third party witnesses, offered as impeachment evidence. We conclude that

---

[1] "Undue influence is the exercise of sufficient control over the person, the validity of whose act is brought in question, to destroy his free agency and constrain him to do what he would not have done if such control had not been exercised." (Internal quotation marks omitted.) *Reynolds* v. *Molitor,* 184 Conn. 526, 528, 440 A.2d 192 (1981). "It is stated generally that there are four elements of undue influence: (1) a person who is subject to influence; (2) an opportunity to exert undue influence; (3) a disposition to exert undue influence; and (4) a result indicating undue influence." (Internal quotation marks omitted.) *Pickman* v. *Pickman,* 6 Conn. App. 271, 275, 505 A.2d 4 (1986).

[2] General Statutes § 52-172 provides in relevant part: "In actions by or against the representatives of deceased persons . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence. . . ."

the Appellate Court improperly affirmed the trial court's exclusion of the plaintiff's challenged testimony on the alternate ground of hearsay, but that the Appellate Court's impropriety was harmless. We also conclude that the Appellate Court properly concluded that the record was inadequate to evaluate the propriety of the exclusion of the third party testimony. Accordingly, we affirm the judgment of the Appellate Court.

The following facts and procedural history, as summarized by the Appellate Court, are relevant to this appeal. "At the time the testator executed his will on December 4, 1995, he was a widower with one child, Patten, and three grandchildren. The will named as beneficiaries [1] the testator's granddaughter, Nicole Toth, [2] Patten, and [3] a residuary trust of which Patten was trustee and Patten and the three grandchildren were beneficiaries. Patten was named executrix of the estate,[3] and Toth was named successor executrix. On December 5, 1997, two days before his marriage to the plaintiff, the testator executed a codicil to his will. It provided in relevant part: 'I am executing this instrument in anticipation of my marriage to [the plaintiff] on December 7, 1997 and direct that my marriage subsequent to the execution hereof shall not be construed to revoke my will. . . . Except as [previously] specified [in the codicil], my Will shall continue in full force and effect as executed by me on and dated December 4, 1995, without other or further direct or implied amendment, modification or alteration. I hereby reaffirm and republish my Will subject only to the amend-

[3] The testator's estate consisted of various properties he owned in Fairfield County, only one of which, Southport Manor, a convalescent home, is of note to this appeal. Patten had been employed by the testator as president and administrator of Southport Manor from 1974 until 1996, when he fired her after, according to Patten, she had refused to divert funds from Southport Manor to some of the testator's other businesses that were in financial trouble.

ments thereof [in this codicil]."[4] The plaintiff and the testator were married as planned.

"The testator died on July 21, 2000, survived by the plaintiff, Patten and his three grandchildren. Patten offered the will and codicil for admission to probate on July 25, 2000. The plaintiff challenged the admission of the instruments, but later withdrew her objections while reserving the right to appeal, at which time the instruments were admitted as the testator's will. The Probate Court granted the plaintiff's petition to appeal from the admission of the instruments. Additionally, upon the plaintiff's petition, the Probate Court removed Patten as executrix of the testator's estate and declined to appoint Toth successor executrix. The Probate Court instead named the defendant, an attorney with no beneficial interest in the estate, as administrator . . . . The plaintiff made a timely election against the will as surviving spouse. See General Statutes § 45a-436.[5]

---

[4] "The will did not provide for the contingency of marriage. Absent the codicil, the testator's marriage to the plaintiff would have revoked the will in its entirety; General Statutes (Rev. to 1995) § 45a-257; see also General Statutes § 45a-257e; leaving the plaintiff with an intestate share of the estate, in this case, one-half outright. See General Statutes § 45a-437, which provides in relevant part: 'Intestate succession. Distribution to spouse. (a) If there is no will . . . the portion of the intestate estate of the decedent . . . which the surviving spouse shall take is . . . (4) If there are surviving issue of the decedent one or more of whom are not issue of the surviving spouse, one-half of the intestate estate absolutely.'

"We note that for wills executed after January 1, 1997, a testator's marriage after the execution of a will no longer revokes the will. Rather, it remains with a surviving spouse, who is to receive an intestate share in the decedent's estate. General Statutes § 45a-257a (a)." *Dinan* v. *Marchand*, supra, 91 Conn. App. 494–95 n.2.

[5] General Statutes § 45a-436 (a) provides: "On the death of a spouse, the surviving spouse may elect . . . to take a statutory share of the real and personal property passing under the will of the deceased spouse. The 'statutory share' means a life estate of one-third in value of all the property passing under the will, real and personal, legally or equitably owned by the deceased spouse at the time of his or her death, after the payment of all debts and charges against the estate. The right to such third shall not be defeated by any disposition of the property by will to other parties."

"The plaintiff appealed to the Superior Court on the ground that the testator executed the codicil to his will 'while under the influence, domination and control of Patten, and as a result of this influence, domination and control, unduly and improperly exerted, the will and codicil were not the free and voluntary expression of the testamentary intent of the [testator].' Trial was held from April 1 to April 8, 2004, following which the jury returned a verdict in favor of the defendant, finding that the will and codicil were executed properly, that the testator had the proper testamentary capacity to execute the codicil and that the codicil was not procured by undue influence. The trial court rendered judgment in accordance with the verdict after denying the plaintiff's motion to set it aside." *Dinan* v. *Marchand,* supra, 91 Conn. App. 494–96.

The plaintiff then appealed from the trial court's judgment to the Appellate Court, claiming that the trial court improperly had excluded the testimony of the plaintiff and two other witnesses relating to threatening statements that Patten allegedly had made to the testator. The plaintiff made an offer of proof regarding the testimony she would have given, if allowed, as to a conversation in which the testator had recounted to her an argument he had had with Patten in which Patten allegedly had threatened to take certain action if the testator did not execute the codicil. The plaintiff made no specific offer of proof as to the other two witnesses' proposed testimony regarding Patten's alleged threats.

The Appellate Court first considered the trial court's exclusion of the plaintiff's testimony under the rule of *Dale's Appeal from Probate,* 57 Conn. 127, 17 A. 757 (1888), and concluded that the trial court's reliance on the rule in that case was misplaced. *Dinan* v. *Marchand,* supra, 91 Conn. App. 503. Specifically, the Appellate Court noted that *Dale's Appeal from Probate* involved a will contest by a legatee who challenged the testamen-

tary capacity of the testatrix and claimed undue influence by the testatrix' son in execution of the will. Id., 501. The court noted that, in *Dale's Appeal from Probate*, this court had held that one legatee's statement, offered as an admission against interest, if potentially harmful to the inheritance rights of other legatees, was inadmissible, under the offered hearsay exception for admissions against interest.[6] Id. The court in *Dale's Appeal from Probate* and its progeny reasoned that the admission effectively would be used against all the legatees, because a finding of undue influence would invalidate the entire will. Id., 501–502, citing *Livingston's Appeal from Probate*, 63 Conn. 68, 76, 26 A. 470 (1893). Although the Appellate Court recognized that Patten's statements also potentially threatened the rights of the other legatees under the will, the court concluded that the nature of her statements differed from those in *Dale's Appeal from Probate* and its progeny. *Dinan* v. *Marchand*, supra, 502–503. In *Dale's Appeal from Probate*, supra, 129, the legatee had stated that the testator lacked capacity or executed an instrument under undue influence but later sought to take under the contested will, whereas Patten's alleged

---

[6] We note that the Appellate Court mischaracterized this court's reasoning in *Dale's Appeal from Probate* as relying on the hearsay exception for a statement against civil interest. See Conn. Code Evid. § 8-6 (The provision of the Code of Evidence setting forth a hearsay exception for admissions against interest provides in relevant part: "The following are not excluded by the hearsay rule if the declarant is unavailable as a witness . . . [3] Statement against civil interest. A trustworthy statement that, at the time of its making, was against the declarant's pecuniary or proprietary interest, or that so far tended to subject the declarant to civil liability that a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true."). In fact, because the declarant in *Dale's Appeal from Probate* was available as a witness and was a party to the proceeding, the court relied on the exception for a statement of a party opponent. See Conn. Code Evid. § 8-3 ("[t]he following are not excluded by the hearsay rule, even though the declarant is available as a witness: [1] . . . [a] statement that is being offered against a party and is [A] the party's own statement").

threats against the testator were not admissions that the codicil was invalid, but, rather, statements of a legatee that the plaintiff sought to utilize to prove the legatee's undue influence over the testator. *Dinan* v. *Marchand*, supra, 503. In fact, the Appellate Court noted, Patten allegedly had made the threats to protect her pecuniary interest in the testator's existing will and thereafter insisted that the will and codicil properly were executed and valid. Id., 503 and n.11.

Although the Appellate Court concluded that the trial court improperly had excluded the plaintiff's testimony based on *Dale's Appeal from Probate*, it held that the impropriety was "harmless."[7] Id., 503–504. The Appellate Court reasoned that, although Patten's statements properly could be admitted for a nonhearsay purpose, the testator's recounting of those statements to the plaintiff was inadmissible hearsay. Id., 505. The Appellate Court summarily dismissed in a footnote the application of § 52-172, commenting that, "the oft-misunderstood dead man's statute does not create a hearsay exception for statements of dead witnesses." (Internal quotation marks omitted.) Id., 506 n.15. Finally, because the plaintiff had made no offer of proof as to the testimony of her two additional witnesses on this matter, the Appellate Court concluded that it could not determine if the evidentiary ruling limiting their testimony was improper and in turn harmful.[8] Id., 504.

---

[7] Because it determined that the evidence properly was excluded on other grounds, the Appellate Court labeled the trial court's improper reliance on *Dale's Appeal from Probate* as harmless error; *Dinan* v. *Marchand*, supra, 91 Conn. App. 503–504; when it should have characterized it as an alternate ground for affirmance. See *Kelley* v. *Bonney*, 221 Conn. 549, 592, 606 A.2d 693 (1992) (Noting that we are "authorized to rely upon alternative grounds supported by the record to sustain a judgment. . . . Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." [Citation omitted; internal quotation marks omitted.]).

[8] The Appellate Court further noted that, even assuming the other witnesses would have testified that Patten had made the threats described in the plaintiff's offer of proof as to her own testimony, any impropriety in

Accordingly, the Appellate Court affirmed the trial court's judgment. We thereafter granted the plaintiff's petition for certification to appeal, limited to the following issue: "Having determined that the trial court improperly had invoked the rule of *Dale's Appeal from Probate*, [supra, 57 Conn. 127], to exclude evidence in the present case, did the Appellate Court improperly affirm the trial court's evidentiary rulings?" *Dinan* v. *Marchand*, 276 Conn. 917, 888 A.2d 84 (2005).

On appeal to this court, the plaintiff contends that the Appellate Court improperly: (1) concluded that the plaintiff's testimony relating Patten's alleged threats through the testator's voice, which was highly probative as to the ultimate issue of undue influence, was inadmissible hearsay; and (2) failed to determine whether the trial court properly had excluded testimony of the two other witnesses as to Patten's alleged threats.[9] The defendant contends that, under *Vivian's Appeal from Probate*, 74 Conn. 257, 50 A. 797 (1901), and its progeny, the contested portion of the plaintiff's testimony properly was excluded as hearsay, and that, even if we were to assume that the evidence should have been admitted, the impropriety was harmless. The defendant also claims that the proffered testimony of the third party witnesses properly was excluded. We conclude that the Appellate Court improperly affirmed the trial court's

excluding Patten's actual words likely would have been harmless. *Dinan* v. *Marchand*, supra, 91 Conn. App. 504 n.12.

[9] The plaintiff also claims in her reply brief to this court that the excluded statements of Patten satisfy the hearsay exception for "[a] statement that is being offered against a party and is . . . the party's own statement . . . ." Conn. Code Evid. § 8-3 (1) (A). Because the plaintiff did not raise this ground for admission at trial but only in her reply brief to this court, the claim is unpreserved, and we do not review it. See *Grimm* v. *Grimm*, 276 Conn. 377, 393 n.19, 886 A.2d 391 (2005) ("[c]laims . . . are unreviewable when raised for the first time in a reply brief"); *Calcano* v. *Calcano*, 257 Conn. 230, 244, 777 A.2d 633 (2001) ("[i]t is a well established principle that arguments cannot be raised for the first time in a reply brief" [internal quotation marks omitted]).

ruling excluding the plaintiff's testimony as hearsay, but that the impropriety was harmless. We also conclude that the Appellate Court properly determined that the plaintiff had failed to make an offer of proof regarding the excluded testimony of the third party witnesses to permit review of this claim.

Before addressing the merits of the plaintiff's claims, we set forth the applicable standard of review. "Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Aaron L.*, 272 Conn. 798, 811, 865 A.2d 1135 (2005). "The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Kalams* v. *Giachetto*, 268 Conn. 244, 249–50, 842 A.2d 1100 (2004).

I

We turn first to the plaintiff's claim of improper exclusion of her testimony regarding statements that the testator allegedly made to her on their honeymoon, relating the substance of a conversation he had had with Patten. The plaintiff contends that statements that the testator made to her relating Patten's threats should have been admitted either under the dead man's statute, § 52-172, or as state of mind evidence. The defendant

contends that the plaintiff is not entitled to invoke the dead man's statute and that the plaintiff's statements were properly excluded as state of mind evidence under the rule of *Vivian's Appeal from Probate,* supra, 74 Conn. 257. We conclude that the Appellate Court improperly concluded that this evidence was inadmissible hearsay.

The record reveals the following additional facts necessary to our resolution of this claim. At trial, the plaintiff testified that she was unaware that the testator had executed a codicil to his will until the two conversed on the matter during their honeymoon. When the plaintiff attempted to introduce the substance of this conversation, the defendant objected, and the jury was excused so that the plaintiff could make an offer of proof.[10] In response to her counsel's inquiry, the plaintiff related the following conversation that she had had with the testator.

"[The Plaintiff]: He said to me, I made a power of attorney to [Toth, my granddaughter] and I did a codicil to my will. And I said, how come? And he said, well, in case anything happened to me, he said, I had to give somebody the authority, and I didn't want to give it to [Patten]. And he said, [Patten] raised such holy hell about making a codicil, that I had to make the codicil. . . . He said that she threatened him. She wouldn't come to the wedding. She wouldn't bring the grandchildren to the wedding. She was never gonna see him again. She wouldn't let the grandchildren have any contact with or see him. She wouldn't give him the papers that he needed because there was a problem at [Southport Manor, the convalescent home he owned]. The state was investigating and the state's attorney's office was getting involved.

---

[10] In anticipation of this testimony, the defendant had filed a motion in limine, and the court ruled in advance that the plaintiff could not testify as to any of Patten's statements to the testator.

"[Plaintiff's Counsel]: [Patten] had records of his?

"[The Plaintiff]: Yes, she did.

"[Plaintiff's Counsel]: And she said she wouldn't— and he told you that she told him that she wouldn't give him the records?

"[The Plaintiff]: That's right. And [the testator's attorney] had problems getting the documents from [Patten] that [were] needed to protect Southport Manor from payback to the state of Connecticut for the problems that she had created . . . ."[11]

The defendant objected to the admission of these statements on several grounds, arguing that they were inadmissible under *Dale's Appeal from Probate*, supra, 57 Conn. 140, under the dead man's statute, and as hearsay within hearsay. The plaintiff responded that the statements were not being offered for the truth of the matters asserted therein and should be admitted under the state of mind exception to the hearsay rule, or, alternatively, under the dead man's statute. The trial court sustained the defendant's objection, and then instructed the plaintiff that she could not offer any statements of the testator reporting the threats allegedly made by Patten, and allowed testimony only as to the testator's own statements to the plaintiff.

When the jury returned, the plaintiff offered the following testimony regarding her conversation with the testator:

"[The Plaintiff]: He said, [Patten] came up to Southport Manor, she came several times, and she called several times. And—

---

[11] The plaintiff testified that the testator was being investigated by the state for medicare fraud regarding payment for medicine that was supposed to have been purchased by one of Patten's corporations for Southport Manor.

"[Plaintiff's Counsel]: Did he say he had a conversation with her?

"[The Plaintiff]: Yes.

"[Plaintiff's Counsel]: All right. As a result of that conversation that he had with her, did he say how he felt?

"[The Plaintiff]: Yes.

"[Plaintiff's Counsel]: What did he say?

"[The Plaintiff]: He said because of her screaming—

"[Defendant's Counsel]: Objection, Your Honor.

"[The Plaintiff]: It wasn't a conversation.

"[The Court]: Sustained. . . .

"[Plaintiff's Counsel]: Did he say how he felt or what he feared or anything of that nature as a result of these conversations with [Patten]?

"[The Plaintiff]: He was afraid that she would—he would not see her, he would not see his grandchildren, she would not give him the documents that he needed because the state was investigating Southport Manor for fraud from 1992 forward, the years that she was running it that she took so much money. He was frightened and he said, that's what he was afraid of.

"[Plaintiff's Counsel]: And did he say that fear had anything to do with signing the codicil?

"[The Plaintiff]: Yes, that's the reason he did."

Turning to the issue before us, as the certified question in this appeal indicates, we agree with the Appellate Court that the rule of *Dale's Appeal from Probate*, supra,

57 Conn. 127, does not control on the facts of this case.[12] Therefore, we consider whether the Appellate Court properly concluded that, although Patten's statements to the testator could be used for a nonhearsay purpose, the testator's recounting of those statements to the plaintiff was inadmissible hearsay.

As the Appellate Court properly noted, the plaintiff's excluded testimony consisted of two levels of out-of-court statements: Patten's alleged threats to the testator constitute the first level; the testator's recounting of those threats to the plaintiff on their honeymoon constitute the second level. It is well settled that "[a]n out-of-court statement offered to prove the truth of the matter asserted is hearsay and is generally inadmissible unless an exception to the general rule applies." *State* v. *Hines*, 243 Conn. 796, 803, 709 A.2d 522 (1998); see also *State* v. *Wargo*, 255 Conn. 113, 127, 763 A.2d 1 (2000). Moreover, "[h]earsay within hearsay is admissible only if each part of the combined statements is independently admissible under a hearsay exception." Conn. Code Evid. § 8-7. Thus, the plaintiff's testimony could have been admitted only if each level of the out-of-court statements was being used for a nonhearsay purpose or satisfied a hearsay exception.

The Appellate Court concluded that Patten's alleged threats, the first level of out-of-court statements, were

[12] We do not, however, agree with the Appellate Court's reasoning as to why *Dale's Appeal from Probate* is inapplicable here. The Appellate Court concluded that that case did not apply because Patten's statement was not an admission against interest, but, rather, was a "statement by a legatee that the plaintiff asserts provides a basis on which the court should declare the codicil invalid." *Dinan* v. *Marchand*, supra, 91 Conn. App. 503. As we have noted previously; see footnote 6 of this opinion; in *Dale's Appeal from Probate*, the hearsay statement that the court declined to admit was a statement offered by a party opponent, not an admission against interest of an unavailable declarant. *Dale's Appeal from Probate*, supra, 57 Conn. 140. Because Patten is not a party to the present action, therefore, *Dale's Appeal from Probate* is inapposite.

admissible because the plaintiff offered them for a valid nonhearsay use. *Dinan* v. *Marchand,* supra, 91 Conn. App. 503. Specifically, the plaintiff sought to use Patten's alleged threats, not for the truth of whether Patten had intended to follow through on them, but simply for the fact that Patten had made them and, in turn, for their effect on the testator. Statements of declarants offered to show their effect on the listener, not for the truth of the contents of the statements, are not hearsay and are admissible. See *State* v. *Hull,* 210 Conn. 481, 499, 556 A.2d 154 (1989) ("exclusion from hearsay includes utterances admitted to show their effect on the hearer"); see also *State* v. *Cruz,* 212 Conn. 351, 356, 562 A.2d 1071 (1989) ("An out-of-court statement is hearsay when it is offered to establish the truth of the matters contained therein. . . . A statement offered solely to show its effect upon the hearer [however] is not hearsay." [Citations omitted; internal quotation marks omitted.]); *State* v. *Gonzales,* 186 Conn. 426, 429, 441 A.2d 852 (1982) (statements of officers made over police radio properly admitted to show effect on listeners); C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.9.1, p. 577 ("[s]tatements of others that show effect on the hearer or reader are not hearsay on such issues as notice, intent, reasonableness or good faith on the part of the hearer or reader"). Thus, the Appellate Court properly concluded that Patten's alleged threats had a proper nonhearsay use to show their effect on the testator.

The testator's statements relating Patten's alleged threats to the plaintiff constitute the next level of out-of-court statements to which we now turn. In ruling on this issue, the Appellate Court addressed only one of the plaintiff's grounds for admitting the evidence: that the testator's statements to the plaintiff were admissible under the hearsay exception for statements of then existing mental or emotional states, the so-called state

of mind exception. See Conn. Code Evid. § 8-3 (4).[13] The Appellate Court rejected this ground, reasoning that the testator's statements were not relating his then existing mental or emotional state at the time of the conversation with the plaintiff; rather, that they reflected his past mental or emotional condition following the conversation with Patten, were offered to prove a fact remembered, and therefore did not fall within the state of mind exception. We conclude that we need not reach this parsing of the testator's perspective, for there is a straightforward solution to this issue.

The dead man's statute is a long recognized exception to the hearsay rule. See *Gardner* v. *Balboni*, 218 Conn. 220, 231, 588 A.2d 634 (1991); *State* v. *Clemente*, 166 Conn. 501, 530, 353 A.2d 723 (1974) (*Cotter, J.*, dissenting) (noting that § 52-172 is a "legislatively-created [exception] to the hearsay rule"). The statute provides in relevant part: "In actions by or against the representatives of deceased persons . . . the entries, memoranda and declarations of the deceased, relevant to the matter in issue, may be received as evidence. . . ." General Statutes § 52-172.[14]

---

[13] Section 8-3 (4) of the Connecticut Code of Evidence provides: "A statement of the declarant's then-existing mental or emotional condition, including a statement indicating a present intention to do a particular act in the immediate future, provided that the statement is a natural expression of the condition and is not a statement of memory or belief to prove the fact remembered or believed."

[14] We note that, to the extent that the Appellate Court summarily rejected the plaintiff's claim that the trial court improperly had failed to admit the statements of the testator under the dead man's statute, deeming the statute inapplicable to this case, our review of that decision is de novo. See *State* v. *Hardy*, 278 Conn. 113, 119, 896 A.2d 755 (2006) ("[s]tatutory construction is a question of law and therefore our review is plenary" [internal quotation marks omitted]). Because the parties are not contesting the meaning of the express terms of § 52-172, but, rather, the defendant contests its application based on requirements not expressly stated by the legislature, we need not engage in our usual exhaustive practice of statutory construction. See *Dark-Eyes* v. *Commissioner of Revenue Services*, 276 Conn. 559, 570, 887 A.2d 848 (2006) (setting forth pertinent general principles of statutory construction).

The legislature's purpose in enacting the dead man's statute was "to remove the disparity in advantage previously possessed by living litigants as against the representatives of persons whose voices were stilled by death, by permitting the declarations and memoranda of the latter to be received and weighed in the evidential balance as against the assertions of the living." *Doyle* v. *Reeves*, 112 Conn. 521, 526, 152 A. 882 (1931); see also *Bissell* v. *Beckwith*, 32 Conn. 509, 516–17 (1865) ("[t]he object of this law was to enable the representatives of deceased persons to sustain just and defeat unjust claims affecting the estate"). The statute is remedial and construed liberally, generally admitting statements of decedents in actions by or against their representatives. *Starzec* v. *Kida*, 183 Conn. 41, 45 n.4, 438 A.2d 1157 (1981); see also *Facey* v. *Merkle*, 146 Conn. 129, 134, 148 A.2d 261 (1959) (noting that dead man's statute is "broad enough to include ordinary modes of communication" and allowing witness to testify to decedent's nodding or shaking his head in response to questions regarding accident); *Mulcahy* v. *Mulcahy*, 84 Conn. 659, 662, 81 A. 242 (1911) ("The statute . . . is a highly remedial one. Its aim was to take away the great advantage which under pre-existing law living persons had over the representatives of the deceased.").

There is no requirement that the testimony offered be that to which the decedent could have testified if living. *Walter* v. *Sperry*, 86 Conn. 474, 477–78, 85 A. 739 (1913). Moreover, under the guiding principle of permitting wide latitude in admitting the declarations and memoranda "in order that the deceased may speak . . . from beyond the grave"; *Graybill* v. *Plant*, 138 Conn. 397, 405, 85 A.2d 238 (1951); the court has admitted evidence that satisfies the dead man's statute even when such evidence otherwise may have been barred under other rules of evidence. See, e.g., *Plisko* v. *Mor-*

*gan*, 148 Conn. 510, 512, 172 A.2d 621 (1961) (in negligence action, admitting decedent's statement of opinion as to ultimate fact under statute); *Furcolo* v. *Auto Rental Co.*, 110 Conn. 540, 544–45, 148 A. 377 (1930) (rejecting application of rule limiting use of contradictory or inconsistent out-of-court statements solely for impeachment purposes; concluding that statements admissible for truth of facts therein under dead man's statute); see also *Craft's Appeal from Probate*, 42 Conn. 146, 153–54 (1875) (Dead man's statute "puts no limit to the number of memoranda which a man may make . . . and leave behind him; as many as [the decedent] leaves are admissible in evidence . . . . Nor [is there] . . . any limit to the length of time which may elapse between the doing of an act and the making of a memorandum concerning it . . . even years may intervene. If made and left it must be admitted . . . .").

Because the motivation in the creation of the dead man's statute chiefly was policy driven, in the few instances in which this court has refused to admit evidence offered under the auspices of § 52-172, it has done so only when the same policy of putting the decedent on equal footing with the living would be thwarted by the admission of the evidence.[15] Thus, in *Doyle* v. *Reeves*, supra, 112 Conn. 526, the court refused to admit through the decedent's attorney "a mere draft [of a will] never executed by the decedent or even, so far as appears, read to and approved by him." The *Doyle* court rea-

[15] For example, in *Rowland* v. *Philadelphia, Wilmington & Baltimore R. Co.*, 63 Conn. 415, 417, 28 A. 102 (1893), in disallowing the admission of a memorandum written by the decedent regarding his injuries from an accident to which he later testified in a deposition, the court explained: "It is that as the plaintiff by his deposition had already been a witness on the hearing, *the statute did not apply, because the reason for its application in ordinary cases did not exist in this.* . . . The [dead man's statute] was intended to restore . . . the footing of equality between [the living witness] and the representatives of the decedent . . . . It could not have been intended to discriminate against the surviving party." (Emphasis added.)

soned: "[T]he operation of the doctrine of privileged communication extends to and affects the applicability of [§ 52-172] under the circumstances of the present case. . . . While the statute is entitled to, and has been accorded, a liberal construction having in view its purpose and the mischief it was designed to remedy, it does not follow that the privilege conferred by it is entirely without exceptions or limitations in operation. . . . [T]he law, primarily designed for the benefit of the decedent, through his representatives, should not be so construed or applied as to entirely deprive such representatives of that protection which would have been available to the decedent, while living, as to confidential communications between his attorney and himself." (Citations omitted.) Id., 526–27.

Turning to the case at hand, we must consider whether the testimony satisfies the prerequisites for admission under § 52-172: an action by or against a representative of the estate and a declaration of the decedent that is relevant to the matter in issue. For the purposes of § 52-172, a representative of a deceased person, "must take some portion of his estate in consequence of his death, either as devisee or heir, or else he must be strictly a personal representative, as executor or administrator." (Internal quotation marks omitted.) *Bowne* v. *Ide*, 109 Conn. 307, 311, 147 A. 4 (1929); see also *Pixley* v. *Eddy*, 56 Conn. 336, 340, 15 A. 758 (1888); *Lockwood* v. *Lockwood*, 56 Conn. 106, 110, 14 A. 293 (1887). It is undisputed that the plaintiff brought this suit against the court-appointed executor of the deceased testator's estate, falling well within the reach of the statute as construed by this court. See *Mulcahy* v. *Mulcahy*, supra, 84 Conn. 663–64 (executors of decedent's will are his legal representatives for purposes of statute). Because the plaintiff claims that Patten exerted undue influence on the testator in the execution of the codicil to his will, the testator's statements relat-

ing Patten's alleged threats are relevant to the central disputed issue in this matter. Thus, according to the language and purpose of the dead man's statute, all of the proffered statements of the testator, as related by the plaintiff, were admissible under the statute.

The defendant contends, however, that the dead man's statute does not apply because the statute requires that the witness testifying as to the decedent's statements must be a representative of the decedent. The defendant relies on the Appellate Court's dicta in *Pender* v. *Matranga*, 58 Conn. App. 19, 28, 752 A.2d 77 (2000), wherein the court stated: "The dead man's statute requires *not only that the declarant be a representative of a decedent,* but that the action be by or against a representative of the deceased person." (Emphasis added.) The *Pender* court misconstrued § 52-172. Initially we note that, under § 52-172, the *decedent* is the declarant whose out-of-court statements are offered as evidence. More significantly, according to the express language of the statute, the only requirements for admission of the decedent's out-of-court statements and writings are that they be "relevant to the matter in issue" and that the action be "by or against the representatives of the deceased persons . . . ." General Statutes § 52-172. In accordance with these limited requirements, we previously have recognized that a third party who was not an heir or other representative of the decedent's estate and sought to contest the decedent's will could invoke the statute to testify as to the decedent's statements. See *Starzec* v. *Kida,* supra, 183 Conn. 41. Accordingly, we decline to engraft additional requirements onto clear statutory language. See *Laliberte* v. *United Security, Inc.,* 261 Conn. 181, 186, 801 A.2d 783 (2002) ("[i]n the absence of any indication of the legislature's intent concerning this issue, we cannot engraft language onto the statute"). This court will not substitute its own language for that chosen

by the legislature. *Christoper R.* v. *Commissioner of Mental Retardation*, 277 Conn. 594, 608, 893 A.2d 431 (2006); see also *Echavarria* v. *National Grange Mutual Ins. Co.*, 275 Conn. 408, 416–17, 880 A.2d 882 (2005) ("[t]he court . . . cannot read something into a statute . . . nor can it substitute its judgment of what would constitute a wiser provision for the clearly expressed intent of the legislature" [internal quotation marks omitted]).

The defendant also contends that, irrespective of the dead man's statute, *Vivian's Appeal from Probate*, supra, 74 Conn. 257, requires exclusion of the evidence. In that case, this court held that evidence of a declaration of the testator that his will "was made under the constraint proceeding from his wife . . . and that in certain other matters he had acted under her domination," properly was excluded as hearsay. Id., 260–61. The party offering the testator's statements had sought their admission as evidence of the testator's state of mind, and the court rejected them on that basis, noting that, "[t]hey were not presented as statements from which inferences of material facts could justly be made." Id., 261. The parties in *Vivian's Appeal from Probate* did not brief or raise the claim that the testimony was admissible under the dead man's statute and, therefore, the court did not consider whether the statute would dictate a contrary result.

Unlike the facts of *Vivian's Appeal from Probate*, in the present case, the plaintiff expressly has invoked the dead man's statute as a basis for admitting the evidence. Therefore, *Vivian's Appeal from Probate* is not controlling.[16]

---

[16] Indeed, *Vivian's Appeal from Probate* has been cited only in a limited number of cases; in these cases the dead man's statute apparently had not been raised as a ground for admission, and the dispositive issue was whether the evidence was admissible under the state of mind exception to the hearsay rule. See, e.g., *Babcock* v. *Johnson*, 127 Conn. 643, 644, 19 A.2d 416 (1941) (testator's statement, four years prior to his death, that his will was "all right" properly was admitted because it was not used for truth of matter

Indeed, numerous cases decided since *Vivian's Appeal from Probate* in which the dead man's statute squarely was raised have admitted a plethora of hearsay evidence, probative of the issues in dispute, in the form of statements and writings of deceased persons. See, e.g., *Tarquinio* v. *Diglio*, 175 Conn. 97, 99–100, 394 A.2d 198 (1978) (in tort action against decedent's brother, court properly allowed decedent's wife and brother to testify as to remarks made by decedent after car accident); *Plisko* v. *Morgan*, supra, 148 Conn. 511–12 (in action against owner of house, decedent's written statement opining, " '[i]f it had not been for the worn slippery nosing of the edge of the stair tread, I would not have hurt my leg,' " should have been admitted under § 52-172, despite fact that statement contained opinion and may not have been admitted if decedent had been testifying while alive); *Facey* v. *Merkle*, 146 Conn. 129, 133–34, 148 A.2d 261 (1959) (in negligence action against owners of rest home, permitting, under § 52-172, wife to testify to incapacitated husband's response, by nodding or shaking his head, to her questions regarding circumstances of fall from which he later died); *Sterling Materials Co. Ltd.* v. *Brooks Bank & Trust Co.*, 119 Conn. 549, 551, 177 A. 718 (1935) (allowing secretary to testify to statements made by her deceased employer contradicting plaintiff's claim that decedent had ordered roofing materials from plaintiff); *Walter* v. *Sperry*, supra, 86 Conn. 477–80 (holding that exclusion of decedent's handwritten document regarding disputed payments, which was admissible under predecessor to § 52-172, constituted reversible error mandating new trial, notwithstanding fact that decedent's son was permitted to testify to anything said by decedent regarding his dealings with plaintiff).

asserted, but to show his state of mind regarding his will); *Spencer's Appeal from Probate*, 77 Conn. 638, 643, 60 A. 289 (1905) (excluding decedent's statement that he had made will favoring his wife in order to "keep her quiet," but allowing statement that he spoke of his brother "affectionately").

Despite the fact that we conclude that the plaintiff should have been allowed to testify as to the testator's recounting of Patten's threats, after measuring the weight of the evidence that the trial court allowed the plaintiff to present, we find the impropriety in this exclusion to be harmless. The plaintiff was allowed to testify to the testator's tumultuous relationship with Patten as well as to his fear about what Patten might have done if he had not executed the codicil, thereby indirectly communicating the alleged threats through testimony of the testator's state of mind. Specifically, the plaintiff testified that, *as a result of his conversation with Patten,* the testator was afraid that he would not see Patten or his grandchildren and that Patten would not give him the documents that he needed for the state's investigation of his business. The plaintiff testified further that this fear was the reason that the testator had executed the codicil. As we discuss in greater detail in part II of this opinion, the plaintiff also was permitted to introduce testimony from third parties that the testator had told Patten not to threaten him and that the testator had said something during an argument with Patten about "changing the paper." We conclude that it is unlikely that the addition of the plaintiff's testimony relating Patten's alleged threats directly in Patten's own words would have affected the jury's decision in this case. The jury easily might have drawn the inference of these threats from the plaintiff's testimony at trial. Therefore, we conclude that the Appellate Court properly affirmed this part of the trial court's evidentiary ruling, albeit on alternate grounds.

## II

Finally, we turn to the exclusion of certain testimony by the third party witnesses, who, according to the plaintiff, would have testified as to threats made by Patten, for the purpose of impeaching Patten's testimony and for substantive evidence of undue influence.

Specifically, the plaintiff sought to introduce testimony as to arguments between Patten and the testator that allegedly had been overheard by Constantine Scarveles, a handyman and driver frequently employed by the testator, and by Jean Hall, an employee at Southport Manor. See footnote 3 of this opinion. The plaintiff contends that the Appellate Court improperly failed to determine whether the trial court's exclusion of this testimony was harmful. The defendant avers that, even if we were to assume that the trial court improperly relied on *Dale's Appeal from Probate* to limit the testimony of Scarveles and Hall, the excluded portion of the testimony nevertheless was inadmissible hearsay. In the alternative, he contends that, because the plaintiff failed to make an offer of proof regarding their testimony concerning Patten's alleged threats, the Appellate Court properly concluded that it was unable to make an assessment of harmfulness based on the record. For the reasons stated herein, we conclude that, because the plaintiff failed to make an offer of proof pertaining to the testimony of these witnesses regarding Patten's alleged statements, we are unable to evaluate the propriety and, in turn, possible harmfulness of the exclusion.

The record reveals the following additional facts necessary to address this issue. The trial court ruled that, like the plaintiff, based on *Dale's Appeal from Probate*, Scarveles and Hall were precluded from relating any of Patten's alleged statements in their testimony, but allowed them to testify that they had witnessed Patten and the testator arguing at Southport Manor in late 1997.[17] In her offer of proof regarding the excluded portion of Scarveles' testimony, the plaintiff averred that she intended to call Scarveles to impeach Patten's

---

[17] There was conflicting testimony as to the exact date of this alleged argument. According to the testimony of Scarveles and Hall, it occurred in either November or December of 1997.

testimony that she had not visited Southport Manor in late 1997 and therefore had no conversation with the testator there at that time. The trial court then permitted Scarveles to testify that he had witnessed Patten and the testator arguing at Southport Manor, and permitted him to testify to the statements made by the testator, though not those of Patten, concluding that the impeachment purpose would be served sufficiently without Patten's statements. In the course of his testimony, Scarveles testified that he had heard the testator tell Patten, " 'don't threaten me, don't yell at me.' "

The record is silent, however, as to what Scarveles would have testified to, if permitted, regarding Patten's purported responses, thereby leaving us with no ability to ascertain whether Scarveles' testimony should have been admitted. See *Schnabel* v. *Tyler*, 230 Conn. 735, 758–59 n.17, 646 A.2d 152 (1994) ("Absent an offer of proof at trial; *Johnson* v. *Newell*, 160 Conn. 269, 277, 278 A.2d 776 [1971]; there is no way to ascertain what additional relevant testimony [the witness] was prohibited from introducing, if any. Indeed, even before this court, [the witness] has not identified what specific testimony he would have presented beyond that which was admitted by the trial court."); *State* v. *Bunker*, 89 Conn. App. 605, 628, 874 A.2d 301 (2005) (although evidence of coercion would have been relevant and helpful to establishing defense of entrapment, defendant's offer of proof included only vague assertions about "possible coercion" and "possible threats" that may have been revealed by informant's testimony).

The plaintiff made no offer of proof regarding Hall's testimony, but directed Hall not to testify as to what she had overheard Patten say to the testator during the alleged argument, and only to relate the testator's statements. Hall related that she had heard Patten arguing with the testator and that she had heard the testator say something about "changing the paper."

Because at trial the plaintiff made no offer of proof regarding the specific substance of the excluded testimony, we agree with the Appellate Court that it is not possible to evaluate the harmfulness of the exclusion, if improper, in light of the record. Contrary to the plaintiff's suggestion, the plaintiff's offer of proof regarding her own testimony as to conversations with the testator on their honeymoon does not serve as an offer of proof as to the substance of the testimony that Scarveles and Hall would have offered regarding the arguments between Patten and the testator that they allegedly had overheard. "[A] proper offer of proof serves to inform the court of the legal theory under which the offered evidence is admissible . . . [and] of the specific nature of the offered evidence so the court can judge its admissibility, thereby creating an adequate record for appellate review. . . . The absence of an offer of proof may create a gap in the record that would invite inappropriate speculation on appeal about the possible substance of the excluded testimony." (Citation omitted; internal quotation marks omitted.) *Burns* v. *Hanson*, 249 Conn. 809, 824, 734 A.2d 964 (1999); see also *State* v. *Saunders*, 267 Conn. 363, 384 n.21, 838 A.2d 186 (2004) ("[b]ecause the defendant failed to identify the purpose of the proffered evidence adequately so that the court could determine its admissibility, we decline to review the defendant's claim").

Moreover, these witnesses were allowed to testify that they heard Patten arguing with the testator at Southport Manor in either December or November of 1997, thereby directly contradicting Patten's testimony that she had not visited the testator there in the months preceding his marriage. Thus, to the extent these witnesses were called to impeach Patten's testimony, that purpose was achieved by the testimony presented at trial. The plaintiff has offered the testimony of these

witnesses for no other purpose, and we decline to create a different one here.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.